# In the United States Court of Federal Claims

No. 08-745C
(Filed: May 26, 2009)

*************************************
ROSA D.  BONEWELL,           *
                                *
          Plaintiff,     *    RCFC 12(b)(1); Survivor Benefit Plan,
                                *    10 U.S.C. §§ 1447-1455; Former Spouse
v.                          *    Election; Deemed Former Spouse Election;
                                *    Jan's Helicopter Service, Inc.
THE UNITED STATES,        *
                                *
          Defendant.    *
*************************************

Chester H. Morgan, II, Colorado Springs, CO, for plaintiff.

John S. Groat, United States Department of Justice, Washington, DC, for defendant.

## OPINION AND ORDER

**SWEENEY**, Judge

In this case, plaintiff, as the former spouse of a deceased United States Air Force ("Air Force") retiree, claims that she is entitled to annuity payments through the military's Survivor Benefit Plan ("SBP").  Defendant has moved to dismiss plaintiff's complaint for lack of jurisdiction pursuant to Rule 12(b)(1) of the Rules of the United States Court of Federal Claims ("RCFC").  For the reasons set forth below, the court denies defendant's motion.

## I. BACKGROUND[1]

The SBP was enacted by Congress in 1972 to provide benefits to surviving spouses and dependent children of deceased military retirees.  Act of Sept. 21, 1972, Pub. L. No. 92-425, 86 Stat. 706 (codified as amended at 10 U.S.C. §§ 1447-1455 (2000)).[2]  In 1982, Congress expanded the list of potential SBP beneficiaries to include former spouses.  See Uniformed Services Former Spouses' Protection Act, Pub. L. No. 92-425, § 1003, 86 Stat. 706, 735-36 (1982).  A

---

[1]  The court derives the facts in this section from plaintiff's complaint ("Compl.") and the exhibits attached to the complaint ("Compl. Ex.").

[2]  Unless otherwise stated, all citations to 10 U.S.C. §§ 1447-1455 are to the 2000 version of the United States Code, the law in effect when the relevant events in this case occurred.

service member who is married or has dependent children at retirement is automatically enrolled in the SBP unless he or she affirmatively elects not to participate. 10 U.S.C. § 1448(a)(2). The retired pay of SBP participants is reduced in accordance with the type and number of designated beneficiaries. Id. § 1452. Upon the death of an SBP participant, his or her beneficiaries receive monthly annuity payments. Id. § 1450(a).

On July 6, 1968, plaintiff married Technical Sergeant Rodney L. Bonewell ("TSgt Bonewell") in the Republic of the Philippines, where TSgt Bonewell was stationed with the Air Force. Compl. ¶ 6; Compl. Ex. 2 at 19. During the course of their marriage, plaintiff and TSgt Bonewell had two children: a son born in 1975 and a daughter born in 1983. Compl. Ex. 4 at 2. TSgt Bonewell retired from active duty on August 1, 1984, after twenty years of service. Compl. ¶ 6. Upon his retirement, TSgt Bonewell elected to participate in the SBP, providing coverage for his children, but not plaintiff.[3] Compl. Ex. 1 at 2, 25. Subsequently, on March 31, 1993, TSgt Bonewell elected to provide coverage for both plaintiff and their children.[4] Id.; Compl. ¶ 6. His retired pay was reduced accordingly. Compl. ¶ 6.

Plaintiff and TSgt Bonewell legally separated on October 27, 2000. Compl. Ex. 2 at 22-25. Then, on May 10, 2001, they filed a pro se petition to dissolve their marriage. Id. at 20-21; Compl. ¶ 7. The Decree of Dissolution, which incorporated the prior separation agreement, was issued by the El Paso County, Colorado District Court on May 11, 2001. Compl. ¶ 7; Compl. Ex. 2 at 20-21. Paragraph eight of the separation agreement provided: "The pension and retirement accounts will be divided as follows: Wife shall receive $472.54 per month of Husband's Air Force Retirement and SSP [sic] benefits." Compl. Ex. 2 at 23. Accordingly, on May 16, 2001, TSgt Bonewell submitted DD Form 2558, Authorization to Start, Stop or Change an Allotment, to the Defense Finance and Accounting Service ("DFAS"), requesting that plaintiff receive a monthly allotment of $472.54 from his retired pay. Compl. Ex. 1 at 28. On the form, TSgt Bonewell indicated that the allotment was being made pursuant to a "court ordered divorce settlement,"[5] id., but there is conflicting evidence as to whether TSgt Bonewell submitted the Decree of Dissolution with his DD Form 2558. On the one hand, TSgt Bonewell may have attached to his DD Form 2558 a copy of the notice setting the final hearing on the dissolution and

---

[3] At the time of his retirement, TSgt Bonewell would have been required to notify plaintiff of his decision not to elect coverage for her. See 10 U.S.C. § 1448(a)(3)(B) (1982).

[4] In 1989, Congress established an open enrollment period that allowed TSgt Bonewell, who was otherwise prevented from revoking his decision to forgo coverage for plaintiff, see 10 U.S.C. § 1448(a)(4)(A) (1982), to name plaintiff as an SBP beneficiary, see Military Survivor Benefits Improvement Act of 1989, Pub. L. No. 101-189, § 1405, 103 Stat. 1352, 1586, amended by National Defense Authorization Act for Fiscal Year 1991, Pub. L. No. 101-510, § 631, 104 Stat. 1485, 1580 (1990).

[5] Despite this notation suggesting that he was no longer married, TSgt Bonewell continued to receive a reduced level of retired pay pursuant to 10 U.S.C. § 1452. Compl. ¶ 8.

a copy of the page from the separation agreement containing paragraph eight.  Id. at 28-30 (containing the three pages); accord id. at 53 (containing a February 9, 2004 advisory opinion from the Office of the Judge Advocate General indicating that TSgt Bonewell submitted the Decree of Dissolution/separation agreement to the DFAS).  Indeed, each of the three pages bears the same unique identifier (i.e., "LKY3070300375") and a consecutive page designation (i.e., "Page 1 of 3," "Page 2 of 3," or "Page 3 of 3") along the top of the page.  Id. at 28-30.  Moreover, on the page from the separation agreement, paragraph eight has been highlighted, suggesting that it had been provided in support of TSgt Bonewell's DD Form 2558.  Id. at 30.

On the other hand, the Air Force has more recently claimed, contrary to its previous position, that "[a]lthough the allotment request form acknowledges the divorce decree, [it] has no basis to know whether [TSgt] Bonewell submitted a full or partial copy of his divorce decree and separation agreement along with the allotment authorization."  Id. at 26 (containing a July 31, 2006 advisory opinion from the DFAS).  According to the DFAS:

> [T]he copy of the member's DD 2558 . . . was entered into DFAS'[s] computerized records on July 3, 2003, and was copied into the pay system along with two random pages from [the] divorce proceedings in Colorado.[6]  . . .  We have no basis to know whether these two pages from different parts of [the] divorce proceeding were submitted by the member along with the original allotment authorization or why these documents were imaged into the record over two years after the allotment form was executed.

Id. (footnote added); accord id. at 40 (containing a February 17, 2006 advisory opinion from the Office of the Judge Advocate General); cf. id. at 40 n.7 (indicating that the DFAS informed the Office of the Judge Advocate General that the "May 2001 voluntary allotment form appears in the DFAS records 'only' because someone submitted it to DFAS in July 2003").  Regardless of whether any documents were submitted with the DD Form 2558, plaintiff began receiving a monthly payment of $472.54 from the DFAS.  Compl. ¶ 7.

Although TSgt Bonewell reallocated a portion of his retired pay in conformance with the Decree of Dissolution, he did not make a separate, specific request to the DFAS to change his SBP coverage for plaintiff from "spouse" to "former spouse."[7]  Compl. Ex. 1 at 25-27, 40; see 10 U.S.C. § 1448(b)(3)(A)(iii) (providing that an election of former spouse coverage "must be written, signed by the person making the election, and received by the Secretary concerned within one year after the date of the decree of divorce, dissolution, or annulment").  Further, the

---

[6]  There are no markings on these three pages indicating that they were "entered into DFAS'[s] computerized records on July 3, 2003."  See Compl. Ex. 1 at 28-30.

[7]  Congress prescribed the method for service members to make a former spouse election in 1983.  See Department of Defense Authorization Act, 1984, Pub. L. No. 98-94, § 941(a)(2), 97 Stat. 614, 652-53 (1983) (amending 10 U.S.C. § 1448(b) (1982)).

DFAS has no record of plaintiff submitting a request that she be deemed a former spouse for SBP purposes.[8]  Compl. Ex. 1 at 25, 40; see 10 U.S.C. § 1450(f)(3)(A), (C) (providing that a participant who is required "to provide an annuity to a former spouse" but "fails or refuses to make such an election" will be deemed to have made the election if the former spouse submits a "written request" for the election and a "copy of the court order" within "one year of the date of the court order").  TSgt Bonewell subsequently remarried on August 13, 2001.  Compl. ¶ 8.  He did not notify the DFAS of his new marriage.  Id.; Compl. Ex. 1 at 40.  Nor did he attempt to change his election from plaintiff to his new spouse as the proper recipient of the SBP annuity.  Compl. ¶ 8; see also Compl. Ex. 1 at 26 ("[A]t the time of the member's death[, plaintiff] was still listed as the member's spouse on the SBP screen of the automated retired pay system.").

TSgt Bonewell died on April 29, 2003.  Compl. ¶ 8; Compl. Ex. 2 at 26, 40.  Thereafter, on May 27, 2003, plaintiff submitted an application to receive the SBP spouse benefits awarded to her pursuant to the Decree of Dissolution, along with TSgt Bonewell's death certificate.[9]  Compl. Ex. 1 at 27, 40.  But see id. at 27 (indicating that the application was submitted in June 2003).  However, the DFAS denied plaintiff's application.  In a June 19, 2003 letter, the London, Kentucky office of the DFAS indicated that the "[r]ecords on file at" that location showed that TSgt Bonewell "elected to participate in the [SBP] . . . upon retirement, 8-1-1984, for spouse and child coverage" and that because plaintiff was "not married to Mr. Bonewell at the time of his death," it was denying her "application for SBP" benefits.  Id. at 74.  But cf. id. at 2, 25 (indicating that upon retirement, TSgt Bonewell elected SBP coverage only for his children).  Consequently, when the DFAS received an application for the SBP annuity from TSgt Bonewell's widow in July 2003, appended to which was a copy of the Decree of Dissolution, it granted the application and began making monthly annuity payments to her.[10]  Id. at 27, 40.

Plaintiff ultimately retained an attorney, who, in an October 2, 2003 letter to the DFAS, sought reconsideration of the June 19, 2003 denial.  Id. at 77-78.  The DFAS responded on October 6, 2003, as follows:

---

[8]  Congress amended the SBP in 1984 to permit former spouses to request a deemed election of coverage.  See Department of Defense Authorization Act, 1985, Pub. L. No. 98-525, § 644, 98 Stat. 2492, 2548 (1984) (amending 10 U.S.C. § 1450(f) (1982)).

[9]  It appears that plaintiff also submitted a claim for unpaid compensation.  In a June 14, 2003 letter, the Cleveland, Ohio office of the DFAS indicated that because the "[r]ecords on file at" that location showed that TSgt Bonewell "designated a beneficiary to receive unpaid compensation due upon his/her death," it was denying plaintiff's "claim for arrears . . . ."  Compl. Ex. 1 at 73.

[10]  TSgt Bonewell's widow had previously called the DFAS to inquire about SBP benefits on May 9, 2003.  Compl. Ex. 1 at 40.

A spouse loses eligibility as an SBP beneficiary upon divorce.  It is important to
know that there is no provision in the SBP, which makes former spouse coverage
an automatic benefit.  The only means by which the divorced spouse may receive
a survivorship annuity is if former spouse coverage is elected/deemed in writing
within one year of divorce.  A court order cannot, by itself, be used to institute
coverage.  The service member must submit a signed election request, before
coverage can be established.

You divorced the member on May 11, 2001.  The former spouse and the
member had until May 11, 2002 to inform DFAS-Cleveland of the divorce and
state your deemed election as former spouse to continue the SBP coverage.

Our records do not reflect a written request from you or the service
member within one year of your divorce date.  Therefore, you are not an eligible
beneficiary for SBP, effective May 11, 2001.

Id. at 70.  Plaintiff contends that the June and October 2003 "correspondence makes it manifestly
clear that when [she] first inquired of DFAS, they were in possession of a divorce decree."[11]
Compl. ¶ 8.

On November 14, 2003, plaintiff submitted a DD Form 149, Application for Correction
of Military Record, to the Air Force Board for Correction of Military Records ("AFBCMR") in a
further attempt to obtain the SBP annuity.  Id. ¶ 9; Compl. Ex. 1 at 69; Compl. Ex. 2 at 16-18.
The AFBCMR returned the DD Form 149 to plaintiff on December 12, 2003, explaining:

[T]he Board cannot rule on a disputed claim to a benefit only one person can
receive.[12]  [The Office of the Judge Advocate General] has advised that this task is

---

[11]  The court notes, however, that the DFAS could have determined that plaintiff was "not
married to Mr. Bonewell at the time of his death," as stated in the June 19, 2003 letter, from the
death certificate plaintiff included with her application, which named TSgt Bonewell's widow as
his wife.  See Compl. Ex. 1 at 40, 74; Compl. Ex. 2 at 26.  Further, the DFAS's October 6, 2003
letter almost certainly reflects the fact that it received a copy of the Decree of Dissolution from
TSgt Bonewell's widow or plaintiff's attorney.  See Compl. Ex. 1 at 40.

[12]  In support of this proposition, the AFBCMR attached to its letter an April 28, 2000
memorandum from the Office of the Judge Advocate General that addressed "Former Spouse
Requests for Survivor Benefit Plan (SBP) Coverage."  Compl. Ex. 1 at 75-76.  In that
memorandum, the Office of the Judge Advocate General provided:

[E]ven though the Board has authority to consider these types of requests, we
would caution the Board to carefully consider the implications of any records
correction before granting such a request.  As [the Air Force Deputy General

best left to the courts . . . since [SBP] former spouse coverage was not properly established on your behalf prior to the member's death.  As a result, by operation of law, your ex-husband's widow is his legal beneficiary and is currently eligible to receive his SBP annuity.

This is not a denial of your request.  If a court determines that you, rather than the member's widow, are entitled to the SBP benefits, you may resubmit your DD Form 149 . . . .

Compl. Ex. 1 at 69 (footnote added).  Dissatisfied with this response, on January 9, 2004, plaintiff entreated the Office of the Judge Advocate General directly for consideration of her DD Form 149.  Id. at 66-67; Compl. ¶ 10.  As a result, the AFBCMR changed course and decided to consider plaintiff's application.  Compl. ¶ 10; Compl. Ex. 1 at 58.

The AFBCMR sought two advisory opinions.  The first was prepared by the Air Force Personnel Center ("AFPC") on January 29, 2004.  Compl. Ex. 1 at 61-62.  At the outset of its opinion, the AFPC explained the relevant law:

---

Counsel for National Security and Military Affairs] has pointed out, "The AFBCMR exists to correct errors and remedy injustices; its authority, while sweeping, can be exercised only in favor of the service member or his/her representative, not against them.  See Doyle v. U.S., 220 Ct. Cl. 285, 311 (1979), cert. den. 446 U.S. 982.  The Board cannot rule on a dispute between two claimants to a benefit only one of them can receive, without taking that benefit away from one of them.  Accordingly, it is not appropriate for the Board to adjudicate such disputes; that task is properly left to the courts."

Id. at 76.  Although it is not necessary for the disposition of defendant's motion, the court notes that the Office of the Judge Advocate General's position lacks legal support.  It is clear that 10 U.S.C. § 1552(a)(2) prohibits a corrections board from correcting a military record in a manner unfavorable to the service member if the correction concerns eligibility for enlistment or reenlistment, acceptance for enlistment or reenlistment, or the promotion of an enlisted member to a higher grade.  However, 10 U.S.C. § 1552 does not expressly preclude adverse corrections in other circumstances, such as when a former spouse seeks to obtain SBP benefits to the detriment of the service member's legal heir.  See King v. United States, 65 Fed. Cl. 385, 390 n.6 (2005) (noting the government's concession that 10 U.S.C. § 1552(a)(2) did not apply in such situations).  Moreover, in 1998, Congress amended 10 U.S.C. § 1552 to add subsection (g), which expressly broadened the scope of the correction of military records to allow for the correction of records pertaining to a former spouse.  See Strom Thurmond National Defense Authorization Act for Fiscal Year 1999, Pub. L. No. 105-261, § 545(b), 112 Stat. 1920, 2022 (1998).

A person loses eligibility to receive an SBP spouse annuity following divorce. However, the law provides two mechanisms for changing spouse coverage to former spouse coverage. Both must be exercised within the first year following divorce: the retiree may file an election change, or the former spouse may request the retiree to be deemed to have made such a change on his or her behalf. In the latter case, the former spouse must provide legal documentation that the member agreed, or that the court ordered the member, to establish former spouse coverage. If neither the member nor the former spouse requests the election change during the one-year eligibility period, former spouse coverage may not be established thereafter. Even though a member failed to notify the [DFAS] of the divorce and continued to pay SBP premiums afterwards, the former spouse is not eligible for annuity payments upon the member's death.

Id. at 61. However, the AFPC found that there was "no evidence" that TSgt Bonewell requested that plaintiff's "SBP coverage be terminated following their divorce" and that "it would be inappropriate to deny her an asset the court intended she receive." Id. at 62. The AFPC recommended that although there was "no evidence of Air Force error in this case," TSgt Bonewell's military record should be corrected to reflect that on May 12, 2001, "he submitted a valid election for former spouse and child coverage based on full retired pay, naming [plaintiff] as the eligible beneficiary." Id.

The second advisory opinion was prepared by the Office of the Judge Advocate General on February 9, 2004. Id. at 53-55. After reiterating the applicable statutory law, it framed the relevant issue as "whether the filing of the divorce decree, which included the separation agreement awarding the applicant SBP benefits, with DFAS meets the statutory requirements of 'a written request, in such a manner as the Secretary shall prescribe . . . requesting that such an election be deemed to have been made,'" such that a deemed election of former spouse coverage could be established. Id. at 54 (quoting 10 U.S.C. § 1450(f)(3)(A)(i)). It concluded that based upon the plain statutory language, as reinforced by two decisions from the United States Court of Federal Claims ("Court of Federal Claims"), "the written request and court order are two different items and the latter does not incorporate the former." Id. at 54-55. Accordingly, the Office of the Judge Advocate General recommended the denial of plaintiff's application, noting that plaintiff's complaint was "with the estate of her former spouse and her only recourse [might] be to bring suit against the estate or the person now receiving the SBP annuity." Id. at 55.

Plaintiff responded to this latter advisory opinion on April 14, 2004. Id. at 49-51. In her response, she distinguished the cited Court of Federal Claims cases, disputed the suggestion of an available alternative remedy, and took issue with the lack of discussion of the AFBCMR's equitable powers. Id. Moreover, plaintiff emphasized the extent to which an injustice had occurred in her case. Id. Ultimately, plaintiff concurred with the conclusion of the AFPC in the first advisory opinion that the interests of justice would be best served by correcting TSgt Bonewell's military record to reflect a timely election of former spouse coverage. Id. at 50-51.

The AFBCMR issued its decision on October 14, 2004.  Id. at 44-48.  After reviewing the underlying facts, the advisory opinions, and plaintiff's response to the advisory opinions, it concluded:

> Insufficient relevant evidence has been presented to demonstrate the existence of an error or an injustice.  Through counsel the applicant essentially contends the submission of the divorce decree to the [DFAS] was sufficient to change the SBP spouse coverage to former spouse coverage.  Counsel argues that by providing the divorce decree, which incorporated the separation agreement, within one year of its issuance[, she] satisfied the statutory "deemed election" written request required of former military spouses pursuant to the law.  However, after thoroughly reviewing the evidence of record and the applicant's submission, we agree with the opinion and recommendation of the . . . Office of the Judge Advocate General, in his memorandum of February 9, 2004, on the subject, and adopt his rationale as the basis for our conclusion that the applicant has not been the victim of an error or injustice.  Specifically, the Chief notes by the statute's plain wording, the written request and the court order are two different items and the latter does not incorporate the former.  Therefore, in the absence of evidence to the contrary, we find no compelling basis to recommend granting the relief sought in this application.

Id. at 47-48.

Unsuccessful before the AFBCMR, plaintiff filed suit in the United States District Court for the District of Colorado ("district court") on July 19, 2005, seeking legal and equitable relief under the Little Tucker Act, 28 U.S.C. § 1346 (2000).  Compl. ¶ 13.  Plaintiff claimed that the AFBCMR's "denial of her claim . . . constituted an abuse of discretion."  Id.; Compl. Ex. 2 at 5-13.  After filing suit, plaintiff entered into settlement negotiations with Assistant United States Attorney Kurt Bohn, who was coordinating with the Office of the Judge Advocate General's litigation division, represented by Lieutenant Colonel Joseph Wendelberger.  Compl. ¶ 14.  Lieutenant Colonel Wendelberger suggested "that in view of recent cases coming from" the Court of Federal Claims, were plaintiff to "voluntarily dismiss her suit from district court[,] the AFBCMR would reconsider its earlier denial and [the Office of the Judge Advocate General] would recommend relief."  Id.  Based upon this representation, plaintiff voluntarily dismissed her complaint in district court.  Id. ¶ 15.

On November 23, 2005, plaintiff resubmitted her claim to the AFBCMR.  Id. ¶ 16; Compl. Ex. 2 at 1-4.  The AFBCMR again solicited an advisory opinion from the Office of the Judge Advocate General, asking whether, in light of the new decisions from the Court of Federal Claims, the Office of the Judge Advocate General would amend the position set forth in its February 9, 2004 advisory opinion.  Compl. Ex. 1 at 38.  The Office of the Judge Advocate General issued its advisory opinion on February 17, 2006.  Id. at 38-42.  It determined, after consultation with the DFAS, that the facts of the case appeared to be different from what it

believed to be the case two years previously.  Id. at 39-41.  Specifically, it rejected its previous belief that TSgt Bonewell had submitted a copy of some or all of the Decree of Dissolution with his DD Form 2558, instead asserting that it appeared that TSgt Bonewell's widow first submitted the "divorce paperwork" to the DFAS in July 2003 with her application to receive the SBP annuity.  Id. at 40.  Based upon this new information, the Office of the Judge Advocate General suggested that the appropriate inquiry was whether the AFBCMR should reconsider plaintiff's application "when the member submitted to DFAS a request for voluntary allotment to his former spouse referring to 'court ordered divorce settlement,' but not attaching the court order or mentioning the SBP benefits."  Id. at 39.  However, the Office of the Judge Advocate General did not formally answer this inquiry.  Instead, it provided:

> We believe that a discussion of the applicability of the two recent court cases to this case is premature until a better factual record is established.  If [plaintiff] did not file any paperwork with DFAS until after her [ex-]husband's death, it seems to us that neither case would apply.  Additionally, even if the requisite paperwork was filed, it now appears that there is another interested party in TSgt Bonewell's SBP.  If that turns out to be the case, the Board should request an advisory opinion on the state of the law on the propriety of acting on the applicant's request.

Id. at 42.  Thus, the Office of the Judge Advocate General recommended that the AFBCMR "reopen this matter to obtain an advisory opinion from DFAS to obtain documentary support for the additional facts DFAS has provided this office and to establish a more accurate record upon which to base the Board's decision," and represented that once the facts had been more clearly established, it would "be happy to provide an opinion at that time on the state of the law concerning the various issues in this matter."  Id.  Plaintiff responded to this advisory opinion on March 24, 2006, arguing that (1) the AFBCMR was bound by the record considered in rendering its October 14, 2004 decision; (2) even if the new facts were true, the DFAS's unilateral changing of TSgt Bonewell's beneficiary was improper; and (3) the equities still remained with plaintiff.  Id. at 32-36.

As suggested by the Office of the Judge Advocate General, the AFBCMR requested an advisory opinion from the DFAS, which the DFAS issued on July 31, 2006.  Id. at 25-31.  As alluded to in the Office of the Judge Advocate General's advisory opinion, the DFAS reevaluated the facts and determined that there was "no evidence that would substantiate [plaintiff]'s claim . . . that the Decree of Dissolution and Separation Agreement were timely submitted to DFAS in order that she begin receiving her portion of [TSgt] Bonewell's retired pay."  Id. at 26.  Indeed, as noted above, the DFAS asserted that it had "no basis to know whether [TSgt] Bonewell submitted" any part of the Decree of Dissolution or the incorporated separation agreement prior to July 3, 2003, the date it contends that the DD Form 2558 and the two pages from the dissolution proceedings were entered into its computerized records.  Id.  After "clarif[ying]" the

fact record,[13] the DFAS opined that the Court of Federal Claims decisions relied upon by plaintiff were distinguishable from plaintiff's case.  Id. at 27.

In light of the DFAS's advisory opinion containing the "clarified" facts, the AFBCMR requested another advisory opinion from the Office of the Judge Advocate General.  In its November 17, 2006 memorandum, the Office of the Judge Advocate General, incorporating its February 9, 2004, and February 17, 2006 advisory opinions, concluded that where a "former spouse wants her court-ordered SBP benefits, and the new spouse presumably believes she remains entitled to the SBP benefits," the AFBCMR was "not the proper forum . . . ."  Id. at 13. It explained:

> While the AFBCMR is expected to honor unambiguous court orders timely filed pursuant to federal law and may recognize undisputed court orders as evidence of member intent, its role is not to construe or enforce court orders, reconcile conflicting court orders and statutes, or decide, in effect, claims disputes between two or more private parties.

Id. at 13-14.  Accordingly, it concluded that "[t]he AFBCMR should not consider cases involving disputed claims unless a court of competent jurisdiction has ruled in the case or requires the AFBCMR to make a determination in the case."  Id. at 14.

In a December 28, 2006 electronic mail message, plaintiff rejected the Office of the Judge Advocate General's conclusion.  Id. at 11.  Plaintiff noted that the opinion was not based upon any legal authority and that "it constitute[d] a complete reversal of an earlier agreement by the AFBCMR to resolve the case on the merits and the express commitment of [the Office of the Judge Advocate General's litigation division] that induced [the] voluntary dismissal of her lawsuit over a year ago."  Id.  Subsequently, on March 5, 2007, plaintiff provided the AFBCMR with an affidavit, and an affidavit of her son, "to shed light on what DFAS knew and when, and more specifically on the issue of substantial compliance . . . ."  Id. at 9; see also Compl. Ex. 4 at 2-4 (containing the affidavits).  In her affidavit, plaintiff stated:

> I believe then and now that DFAS had a copy of the divorce decree.  In the first place, [TSgt Bonewell] told me that he had sent everything in.  He assured me that I would get SBP, not just after the divorce, but again when we knew he was terminal and I was taking care of him, he repeatedly assured me that he had made sure I'd get SBP and that everything was in place.

Compl. Ex. 4 at 2.  Plaintiff's son confirmed her recollection:

---

[13]  The court notes that all of the "clarified" facts were known to the DFAS at the time that plaintiff first filed her application to correct TSgt Bonewell's military record with the AFBCMR.  Moreover, plaintiff avers that she was not provided with the records supporting these "clarified" facts while the AFBCMR was first considering her application.  Compl. ¶ 16.

In November of 2002 [my father] stayed with me at my residence, and the topic came up.  My dad told me that whatever happened he'd make sure that mom was cared for, and that she was already getting part of his military retired pay and that she'd get the Survivors Benefit Plan if he passed away.  To the best of my recollection his specific words were "Your mother will be getting my Air Force retirement." . . . .

. . . . [A]round February of 2003, when he knew that he was probably terminal, we talked about it again.  My uncle, . . . (my dad's brother), had been asking me whether my mom would be okay financially when my dad died.  . . . Dad again repeated that there was nothing to worry about, that he had already taken care of everything.

Id. at 4.

On April 11, 2007, the AFBCMR forwarded to plaintiff two memoranda for review and comment.  Compl. Ex. 1 at 8.  The first memorandum was prepared by the Air Force Deputy General Counsel for National Security and Military Affairs on October 18, 2006, and contained "general guidance" concerning the AFBCMR's authority "to correct an error or remove an injustice in cases where there are competing interests for [SBP] benefits."  Id. at 20.  He explained:

In our view, as a general proposition, the AFBCMR has the authority to correct a record in an SBP case where it considers it necessary to do so to correct an error or remove an injustice.  In such cases, "deemed" elections may not necessarily be outcome-determinative.  Legal authority in this area must be determined on a case-by-case basis . . . .

We have long maintained that the Board should exercise prudence when the consequence of correcting a record may be unfavorable to another person. While not a strict statutory prohibition, we nevertheless believe that in cases where there are possible competing interests, there should be a rebuttable presumption that no record correction should be made if the result would be unfavorable to another person eligible to seek relief from the [AF]BCMR.

In such circumstances, the Board must carefully weigh the equities of the competing interests (and we recommend each side be given the opportunity to comment).  Only in the most extraordinary of circumstances, where the Board determines that equity demands a correction be made to remove an injustice, even though such a correction may be unfavorable to another person, should the Board make a correction.

-11-

Id.  The second memorandum was an advisory opinion prepared by the Office of the Judge Advocate General on October 19, 2006, for another case before the AFBCMR.  Id. at 15-19.  In that case, the AFBCMR inquired whether a military record should be corrected to reflect SBP coverage for a former spouse despite the DFAS having established the service member's widow as the SBP beneficiary.  Id. at 15.  Based on the incomplete facts it was provided, the Office of the Judge Advocate General presumed that neither the military member nor the former spouse "made a proper former spouse SBP election within a year" of the court order directing the member to make the election, thus making the widow the "lawful SBP beneficiary" by operation of law.  Id. at 17.  Based on this presumption, the Office of the Judge Advocate General concluded that because the widow had "a vested interest in the SBP," the former spouse could not "summarily take away her lawful designation as an SBP beneficiary by seeking a correction of the member's military records."  Id. at 17-18.  Moreover, it reiterated its contention that the AFBCMR was not the proper forum to resolve such a contested case.  Id. at 18.  Ultimately, the Office of the Judge Advocate General perceived no error or injustice that could be corrected by the AFBCMR and suggested that the former spouse's recourse existed elsewhere.  Id.

The AFBCMR forwarded one final submission to plaintiff for her review and comment on June 6, 2007: a May 1, 2007 letter from TSgt Bonewell's widow.  Id. at 7; see also Compl. Ex. 3 at 1-4 (containing the letter).  In that letter, TSgt Bonewell's widow indicated that it was her position that she was the proper SBP beneficiary because the necessary paperwork on plaintiff's behalf was not submitted the DFAS within the one-year time limit.  Compl. Ex. 3 at 1, 3.  Based upon this letter, the AFBCMR "encouraged settlement" between plaintiff and TSgt Bonewell's widow, but TSgt Bonewell's widow "did not reply to Plaintiff's repeated efforts to contact her by mail and by e-mail."  Compl. ¶ 22.

The AFBCMR rendered its decision on plaintiff's resubmitted application on March 20, 2008.  Compl. Ex. 1 at 1-6.  After summarizing the additional facts and advisory opinions added to the record subsequent to its October 14, 2004 decision, the AFBCMR concluded that there was "no evidence of an error warranting corrective action in this case" and that it was not "persuaded by counsel's assertions that the applicant has been the victim of an injustice."  Id. at 5.  In support of its conclusion, the AFBCMR noted that there was no evidence of a timely, proper election of former spouse coverage under the SBP and discounted the possibility that, upon the dissolution of his marriage, TSgt Bonewell submitted the relevant portion of his Decree of Dissolution with his DD Form 2558.  Id.  Moreover, the AFBCMR concluded that "taking action 'to preclude the possibility' of an injustice" to plaintiff would "create an injustice to another"–TSgt Bonewell's widow.  Id.  In sum, the AFBCMR found that plaintiff had "failed to sustain her burden of proof regarding the existence of an error or injustice" and that the intervening case law from the Court of Federal Claims relied upon by plaintiff was distinguishable.  Id.

Plaintiff filed the instant suit on October 20, 2008, asserting three claims for relief.  In her first claim for relief, plaintiff avers that the AFBCMR's decision denying her initial application was arbitrary, capricious, and without a basis in law and fact.  Compl. ¶¶ 24-26.  In her second

claim for relief, plaintiff contends that the AFBCMR's decision denying her renewed application, after the Office of the Judge Advocate General's litigation division induced her to dismiss her federal court action by assuring her a favorable recommendation to the AFBCMR, was arbitrary, capricious, contrary to law and equity, in bad faith, and an abuse of discretion.  Id. ¶¶ 27-33.  In her third claim for relief, plaintiff asserts that the Air Force acted in bad faith by inducing her to dismiss her federal court action by assuring her a favorable recommendation to the AFBCMR.  Id. ¶¶ 34-38.  As remedies, plaintiff seeks a declaration that she is the proper beneficiary of the SBP annuity; back SBP annuity payments beginning from May 1, 2003; the correction of TSgt Bonewell's Air Force records to reflect that the DFAS was timely notified of the former spouse election; attorney's fees; and "[s]uch other and further relief as the Court deems just and proper under the circumstances."  Id. ¶¶ (1)-(5).

On December 19, 2008, defendant moved to dismiss plaintiff's complaint for lack of jurisdiction pursuant to RCFC 12(b)(1).  The parties have fully briefed defendant's motion and, having deemed oral argument unnecessary, the court is prepared to rule.

## II.  DISCUSSION

### A.  RCFC 12(b)(1) Motion to Dismiss

In ruling on a motion to dismiss, the court assumes that the allegations in the complaint are true and construes those allegations in plaintiff's favor.  Henke v. United States, 60 F.3d 795, 797 (Fed. Cir. 1995).  However, plaintiff bears the burden of proving, by a preponderance of the evidence, that the court possesses subject matter jurisdiction.  McNutt v. Gen. Motors Acceptance Corp., 298 U.S. 178, 189 (1936); Reynolds v. Army & Air Force Exch. Serv., 846 F.2d 746, 748 (Fed. Cir. 1988).  The court may look to evidence outside of the pleadings to determine the existence of subject matter jurisdiction.  Land v. Dollar, 330 U.S. 731, 735 & n.4 (1974); Reynolds, 846 F.2d at 747.  If the court concludes that it lacks subject matter jurisdiction over a claim, RCFC 12(h)(3) requires the court to dismiss that claim.

### B.  Subject Matter Jurisdiction

Whether the court has jurisdiction to decide the merits of a case is a threshold matter.  See Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94-95 (1998).  "Without jurisdiction the court cannot proceed at all in any cause.  Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause."  Ex parte McCardle, 74 U.S. (7 Wall.) 506, 514 (1868).  The parties or the court sua sponte may challenge the court's subject matter jurisdiction at any time.  Arbaugh v. Y & H Corp., 546 U.S. 500, 506 (2006).

The ability of the Court of Federal Claims to entertain suits against the United States is limited.  "The United States, as sovereign, is immune from suit save as it consents to be sued."

United States v. Sherwood, 312 U.S. 584, 586 (1941).  The waiver of immunity "cannot be implied but must be unequivocally expressed."  United States v. King, 395 U.S. 1, 4 (1969).

The Tucker Act, the principal statute governing the jurisdiction of this court, provides that the Court of Federal Claims has jurisdiction over claims against the United States that are founded upon the Constitution, a federal statute or regulation, or an express or implied contract with the United States.  28 U.S.C. § 1491(a)(1) (2006).  The Tucker Act is merely a jurisdictional statute and "does not create any substantive right enforceable against the United States for money damages."  United States v. Testan, 424 U.S. 392, 398 (1976).  Instead, the substantive right must appear in another source of law, such as a "money-mandating constitutional provision, statute or regulation that has been violated, or an express or implied contract with the United States."  Loveladies Harbor, Inc. v. United States, 27 F.3d 1545, 1554 (Fed. Cir. 1994) (en banc).  To find that a constitutional provision, statute, or regulation is money-mandating, "the allegation must be that the particular provision of law relied upon grants the claimant, expressly or by implication, a right to be paid a certain sum."  Eastport S.S. Corp. v. United States, 372 F.2d 1002, 1007 (Ct. Cl. 1967); see also id. at 1009 ("Under Section 1491, what one must always ask is whether the constitutional clause or legislation which the claimant cites can fairly be interpreted as mandating compensation by the Federal Government for the damage sustained.").

The United States Court of Appeals for the Federal Circuit ("Federal Circuit") has instructed that when engaging in a jurisdictional analysis, a court must determine whether the plaintiff has alleged a right to recovery premised upon a money-mandating constitutional provision, statute, or regulation.  Fisher v. United States, 402 F.3d 1167, 1173 (Fed. Cir. 2005) (en banc portion).  "If the court's conclusion is that the Constitutional provision, statute, or regulation meets the money-mandating test, the court shall declare that it has jurisdiction over the cause, and shall then proceed with the case in the normal course."  Id.  "Only after this initial inquiry is completed and the Court of Federal Claims takes jurisdiction over the case does it consider the facts specific to the plaintiff's case to determine 'whether on the facts [the plaintiff's] claim f[alls] within the terms of the statutes.'"  Greenlee County, Ariz. v. United States, 487 F.3d 871, 876 (Fed. Cir. 2007) (quoting Fisher, 402 F.3d at 1172); accord Yant v. United States, 85 Fed. Cl. 264, 269 (2009) ("Subject matter jurisdiction is determined independently of analyzing whether a plaintiff might ultimately succeed on the merits.").  As explained by the Federal Circuit in Jan's Helicopter Service, Inc.:

> In determining whether the Court of Federal Claims has jurisdiction, all that is required is a determination that the claim is founded upon a money-mandating source and the plaintiff has made a nonfrivolous allegation that it is within the class of plaintiffs entitled to recover under the money-mandating source.  There is no further jurisdictional requirement that the court determine

whether the additional allegations of the complaint state a nonfrivolous claim on the merits.[14]

525 F.3d at 1309 (footnote added).

### C.  Plaintiff Has Alleged a Claim Founded Upon a Money-Mandating Statute

Pursuant to the applicable precedent, the court's initial inquiry is whether plaintiff's claim is founded upon a money-mandating constitutional provision, statute, or regulation. Id. at 1309; Fisher, 402 F.3d at 1173.  In her complaint, plaintiff asserts jurisdiction pursuant to 10 U.S.C. § 1552 and 10 U.S.C. §§ 1447-1455.  Compl. ¶ 5.  Plaintiff's reliance on 10 U.S.C. § 1552, the statute allowing for the correction of military records, to establish jurisdiction is unavailing because, under the facts of this case, it is not a money-mandating statute providing a separate and distinct cause of action under the Tucker Act.  See Martinez v. United States, 333 F.3d 1295, 1315 (Fed. Cir. 2003); see also id. at 1315 n.4 (noting that 10 U.S.C. § 1552 can be money-mandating in two circumstances: (1) "if the plaintiff should have been retired for disability but the Correction Board illegally failed to so find" or (2) "when the correction board has granted relief and the service member seeks to enforce or challenge the implementation or scope of the remedial order").

Defendant contends that the statutes that describe the SBP, 10 U.S.C. §§ 1447-1455, similarly do not mandate the payment of money in this case, arguing that plaintiff has not alleged in any of her three claims for relief "that any 'particular provision' grants her the monetary relief that she seeks . . . ."  Def.'s Mot. Dismiss ("Mot.") 13-14 (quoting Eastport S.S. Corp., 372 F.2d

---

[14]  This holding stands in contrast with the holding in a prior Federal Circuit panel decision that United States Supreme Court precedent required, as a jurisdictional prerequisite, a determination that a plaintiff's claim was not frivolous.  See Moden v. United States, 404 F.3d 1335, 1340-41 (Fed. Cir. 2005) (citing Steel Co., 523 U.S. at 89 ("[D]ismissal for lack of subject-matter jurisdiction because of the inadequacy of the federal claim is proper only when the claim is 'so insubstantial, implausible, foreclosed by prior decisions of this Court, or otherwise completely devoid of merit as not to involve a federal controversy.'")).  When "there is direct, irreconcilable conflict between two panel decisions of the Federal Circuit, the earlier decision is controlling precedent."  Briseno v. United States, 83 Fed. Cl. 630, 633 n.5 (2008) (citing Newell Cos. v. Kenney Mfg. Co., 864 F.2d 757, 765 (Fed. Cir. 1988) ("This court has adopted the rule that prior decisions of a panel of the court are binding precedent on subsequent panels unless and until overturned in banc.  Where there is direct conflict, the precedential decision is the first." (citation omitted))).  However, "the Jan's Helicopter panel announced that any contrary aspects of the Moden discussion of the 'nonfrivolous' claim issue were dicta . . . ."  Id.; see Jan's Helicopter Service, Inc. v. FAA, 525 F.3d 1299, 1308 n.9 (Fed. Cir. 2008) ("In any event, the court's statements [in Moden], quoted at page 4 of the dissent, are dicta, and we are not bound by them . . . .").  Consequently, this court is "constrained to follow Jan's Helicopter as controlling precedent even though it is the later-issued circuit decision."  Briseno, 83 Fed. Cl. at 633 n.5.

at 1007).  Defendant's interpretation of plaintiff's complaint is too narrow.  While plaintiff may not have cited a discrete statutory provision as the basis for her requested relief, it is abundantly clear that she is seeking back SBP annuity payments as a former spouse pursuant to 10 U.S.C. § 1450–the statutory provision that prescribes SBP annuity payment requirements.  See, e.g., Compl. ¶¶ 1, (2).  Indeed, the court must look to the substance of plaintiff's claims and not confine itself to how plaintiff formulated her complaint.  See Gonzales & Gonzales Bonds & Ins. Agency, Inc. v. Dep't of Homeland Sec., 490 F.3d 940, 944 (Fed. Cir. 2007) ("In determining whether a claim is for monetary relief, a court must look beyond the form of the pleadings to the substance of the claim."); Brazos Elec. Power Coop., Inc. v. United States, 144 F.3d 784, 787 (Fed. Cir. 1998) ("[W]e customarily look to the substance of the pleadings rather than their form."); Katz v. Cisneros, 16 F.3d 1204, 1207 (Fed. Cir. 1994) ("[W]e look to the true nature of the action in determining the existence or not of jurisdiction.").  Eastport Steamship Corp. does not dictate a different result.  Accordingly, the court finds that plaintiff's claims, which include a claim for back SBP annuity payments, are founded upon a money-mandating statute.

### D.  Plaintiff Has Made a Nonfrivolous Allegation That She Is Within the Class of Plaintiffs Entitled to Recover Under the SBP

Having found that plaintiff has alleged jurisdiction pursuant to a money-mandating statute, the court must now determine whether she "has made a nonfrivolous allegation that [she] is within the class of plaintiffs entitled to recover under" the SBP.  Jan's Helicopter Serv., Inc., 525 F.3d at 1309.  Defendant contends that plaintiff has failed to make such an allegation, asserting that it is impossible for plaintiff to obtain SBP benefits pursuant to 10 U.S.C. §§ 1447-1455.  Mot. 14-19.  As noted above, former spouses may receive SBP annuities pursuant to 10 U.S.C. § 1450 if either (1) the retired service member made an election in the former spouse's favor within one year of the issuance of the relevant court order, 10 U.S.C. § 1448(b)(3), or (2) the former spouse made a request for a deemed election within one year of the issuance of the relevant court order, id. § 1450(f)(3).  According to defendant, these provisions must be strictly construed.  Mot. 14-15 (citing MacConnell v. United States, 217 Ct. Cl. 33 (1978)).  Thus, it argues, because neither TSgt Bonewell nor plaintiff sought former spouse coverage pursuant to the relevant statutory provision, as strictly construed, plaintiff can never obtain an SBP annuity.  Id. at 14.

Before addressing defendant's contention, it is befitting to engage in a brief survey of the decisions from the Court of Federal Claims addressing claims by former spouses for SBP benefits pursuant to either 10 U.S.C. § 1448(b)(3) or 10 U.S.C. § 1450(f)(3).[15]  The first reported decision was Sumakeris v. United States, 34 Fed. Cl. 246 (1995).  In Sumakeris, the service member, upon his retirement from the United States Army ("Army"), elected to participate in the SBP, providing spouse coverage for his wife.  Id. at 248-49.  The couple subsequently separated in anticipation of divorce.  Id. at 249.  Before their divorce was finalized, the service member withdrew from the SBP.  Id. at 249, 251.  Although the Army claimed that it sent a letter to the

---

[15]  There are no published decisions from the Federal Circuit that address such claims.

service member's wife at the address provided by the service member to notify her of her husband's withdrawal, the wife alleged that she did not receive it.  Id. at 249, 252.  In ruling on the parties' cross-motions for summary judgment, the court first concluded that the Army had not satisfied its duty to provide notice.  Id. at 255.  However, as the court subsequently held, the Army's failure to provide proper notice was rendered meaningless by the couple's subsequent divorce because the service member did not make an election for former spouse coverage within a year after the divorce.  Id. at 256 (citing 10 U.S.C. § 1448(b)(3)(A) (1988)).  Moreover, because the divorce decree did not address SBP benefits, the court held that the service member's ex-wife could not have requested to be deemed a former spouse for SBP purposes.  Id. at 256-57 (citing 10 U.S.C. § 1450(f)(3)(A) (1988)).  Ultimately, the court concluded that the failure to elect or request former spouse coverage caused the service member's ex-wife to be ineligible to receive SBP benefits.  Id.

The Court of Federal Claims revisited the former spouse election provisions three years later in Woll v. United States, 41 Fed. Cl. 371 (1998).  In Woll, the service member, prior to his retirement, elected SBP coverage for his wife and dependent children.  Id. at 372.  After his retirement, he and his wife divorced, and the divorce decree awarded his ex-wife "'survivorship rights'" in his "'military pension.'"  Id. (quoting the divorce decree).  Immediately thereafter, the service member notified the DFAS of his divorce, provided the DFAS with a copy of the divorce decree, and requested withdrawal from the SBP.  Id.; see also id. at 375 (noting that the DFAS discontinued his spouse coverage, but not the coverage for one dependent child).  Separately, about nine months after the divorce, his ex-wife submitted to the DFAS an official form and a copy of the divorce decree "to initiate direct payment for support, alimony, and division of Army retired pay pursuant to 10 U.S.C. § 1408."  Id. at 372.  In ruling on defendant's motion to dismiss for failure to state a claim upon which relief could be granted and the parties' cross-motions for judgment on the administrative record, the court concluded that the service member's submission of the divorce decree with his request to discontinue participation in the SBP did not constitute an election for SBP former spouse coverage.  Id. at 374 (citing 10 U.S.C. § 1448(b)(3)(A) (1994)).  The court also concluded that his ex-wife's submission of the form and divorce decree to obtain "support, alimony, and division of Army retired pay" did not constitute a request for a deemed election because "SBP benefits [did] not fall under any of these categories."  Id. at 375 (citing 10 U.S.C. § 1450(f)(3) (1994)).  Moreover, in response to the ex-wife's contention that "all appropriate documents were submitted, but the information was on the 'wrong form,'" the court noted that although the contention was compelling on its equities, "Congress has determined the manner by which the Army is to administer this annuity program, and [the ex-wife] failed to perfect her rights in the manner set forth by statute."  Id.

The court again addressed the former spouse election provisions in Pence v. United States, 52 Fed. Cl. 643 (2002).  In Pence, upon retirement, the service member elected spouse coverage under the SBP.  Id. at 644.  Shortly thereafter, but prior to the addition of former spouse coverage to the SBP in 1982, the couple divorced.  Id. at 644-45.  The service member provided the Air Force with a copy of the divorce decree, which provided that his wife "would receive one-half of [his] retirement pension and that, if he predeceased her, such payment would

continue upon his death for the remainder of her life." Id. at 644.  Accordingly, his ex-wife began to receive her share of his retired pay.  Id. at 645.  However, when Congress amended the SBP to provide former spouse coverage, the service member did not make the appropriate election.  Id.  And, when Congress amended the SBP to provide former spouses the opportunity to request a deemed election, his ex-wife did not make such a request.  Id.  Thus, when the service member died, almost twenty years after the divorce and more than ten years after Congress enacted the former spouse amendments to the SBP, his ex-wife did not receive an SBP annuity.  Id.  In ruling on defendant's motion to dismiss for failure to state a claim upon which relief could be granted, defendant's motion for judgment on the administrative record, and plaintiff's cross-motion for summary judgment, the court held first that the ex-wife was not entitled to any notice from the Air Force of Congress's amendments to the SBP related to former spouse coverage.  Id. at 646-47.  The court then rejected the ex-wife's contention that the service member's submission of the divorce decree was tantamount to an election of former spouse coverage, holding that because "there was no mechanism for a service member's former spouse to receive SBP benefits" at the time of the couple's divorce, the divorce decree could only be "construed as an order to [the service member] to elect SBP benefits for his former wife when that election became available seven years later . . . ."  Id. at 647-48 (citing 10 U.S.C. § 1450(f)(3)(A) (1988)).[16]

The most recent decision addressing the former spouse election provisions at issue here was issued in 2005.[17]  See Holt v. United States, 64 Fed. Cl. 215 (2005).  In Holt, the service member was required, pursuant to the terms of the divorce decree, to maintain former spouse coverage under the SBP on behalf of his ex-wife.  Id. at 216.  However, the service member failed to make the necessary election.  Id.  And, although his ex-wife submitted to DFAS a copy of the divorce decree more than once in the year following the divorce to secure her share of the service member's retired pay, she never made a separate, written request to be deemed a former spouse under the SBP.  Id. at 217-18.  Notwithstanding the lack of a separate, written request, a paralegal at the DFAS with whom the ex-wife had been corresponding, see id. at 224-25, forwarded a copy of the divorce decree to "the SBP 'shop,'" id. at 218, along with a

_____

[16]  There is no indication that the court considered the service member's submission of the divorce decree pursuant to 10 U.S.C. § 1448(b)(3)(A) (1988).

[17]  The Court of Federal Claims has addressed the election of former spouse coverage under the SBP in two other cases.  See King, 65 Fed. Cl. at 385; Flynn v. United States, 46 Fed. Cl. 414 (2000).  However, in neither of those cases did the court analyze the election of former spouse coverage pursuant to 10 U.S.C. § 1448(b)(3) or 10 U.S.C. § 1450(f)(3).  Rather, Flynn concerned the election of former spouse coverage upon becoming eligible to participate in the SBP, i.e., at retirement, which implicated the prescriptions of 10 U.S.C. § 1448(b)(2).  See 46 Fed. Cl. at 419-20.  And, King concerned a military record that had already been corrected by the AFBCMR pursuant to 10 U.S.C. § 1552 to reflect a proper election of former spouse coverage.  See 65 Fed. Cl. at 389-90.  Because neither case analyzed the statutory provisions relied upon by plaintiff here to establish jurisdiction, the court need not address the cases at this time.

memorandum stating: "'That portion of the enclosed Amended Final Judgment of Dissolution of marriage concerning SBP benefits entitlement is forwarded for your review and action as a matter under your cognizance,'" id. at 225.  The service member eventually remarried and provided notice to the DFAS of his new marriage.  Id. at 218.  Accordingly, upon his death, in the absence of former spouse coverage, his widow received the SBP annuity.  Id. at 218-19.  In ruling on defendant's motion to dismiss for failure to state a claim upon which relief could be granted, defendant's motion for judgment on the administrative record, and plaintiff's cross-motion for summary judgment, the court found that the ex-wife was not required to submit a separate, written request because at the time the divorce, the Secretary of the United States Navy had not yet "prescribed the 'manner' of the written request" necessary for a deemed former spouse election.  Id. at 224 (quoting 10 U.S.C. § 1450(f)(3)(A)(i)); accord id. at 225-26, 228.  Indeed, the court noted that the ex-wife "was not bound by any particular form or procedure when making her deemed election," and that even the memorandum prepared by the paralegal sufficed as an election.  Id. at 226-27.  Accordingly, the court concluded that the ex-wife had made a proper request to be deemed a former spouse and was therefore entitled to SBP benefits.  Id. at 228.

All four of these cases–Sumakeris, Woll, Pence, and Holt–were decided on the merits.  Indeed, in none of the cases did defendant challenge the court's jurisdiction, despite the fact that in three of the cases, the service member did not properly elect former spouse coverage and the former spouse did not properly request a deemed former spouse election.  Moreover, in one case, the court expressly held that it possessed jurisdiction.  See Pence, 52 Fed. Cl. at 645.  While that specific holding arose prior to the Federal Circuit's decision in Jan's Helicopter Service, Inc., it is clear that the Court of Federal Claims has generally found that jurisdiction in these circumstances is noncontroversial.  Thus, defendant blazes a new trail in the case sub judice when it argues that jurisdiction is lacking due to plaintiff's failure to demonstrate an election of former spouse coverage under the SBP.  However, such an application of Jan's Helicopter Service, Inc. is unwarranted.

As noted above, to establish jurisdiction, plaintiff must demonstrate, pursuant to Jan's Helicopter Service, Inc., that she "has made a nonfrivolous allegation that [she] is within the class of plaintiffs entitled to recover under" the provisions of the SBP.  525 F.3d at 1309.  Plaintiff has alleged that (1) she and TSgt Bonewell dissolved their marriage on May 11, 2001; (2) the Decree of Dissolution incorporated their prior separation agreement; (3) the separation agreement awarded her the SBP annuity; and (4) both she and TSgt Bonewell believed that TSgt Bonewell had made the proper arrangements with the Air Force to effectuate the SBP provision of the Decree of Dissolution/separation agreement.  Because former spouses are entitled to SBP benefits if such coverage has been duly elected, these allegations are sufficient to satisfy the standard set forth in Jan's Helicopter Service, Inc. and therefore serve to defeat defendant's motion to dismiss for lack of jurisdiction.  The court possesses jurisdiction to entertain plaintiff's claim for back SBP annuity payments, and, consequently, plaintiff's claims that the AFBCMR's decisions were arbitrary, capricious, and without a basis in law and fact.  See Martinez, 333 F.3d at 1314 ("[W]e have treated a claim 'for back pay within our jurisdiction' as 'an appropriate

occasion for reviewing the actions of the correction boards.'" (quoting <u>Sanders v. United States</u>, 594 F.2d 804, 812 (Ct. Cl. 1979))).

Defendant's contentions that TSgt Bonewell did not elect, and that plaintiff did not request, former spouse coverage pursuant to the terms of the relevant statutory provisions raise questions on the merits.  <u>See</u> <u>Jan's Helicopter Serv., Inc.</u>, 525 F.3d at 1309 ("There is no further jurisdictional requirement that the court determine whether the additional allegations of the complaint state a nonfrivolous claim on the merits."); <u>Greenlee County, Ariz.</u>, 487 F.3d at 876 ("Only after this initial inquiry is completed and the Court of Federal Claims takes jurisdiction over the case does it consider the facts specific to the plaintiff's case . . . ."); <u>Yant</u>, 85 Fed. Cl. at 269 ("Subject matter jurisdiction is determined independently of analyzing whether a plaintiff might ultimately succeed on the merits.").  However, defendant has only challenged this court's jurisdiction by its present motion.  Thus, it would be inappropriate for the court to address in this ruling whether plaintiff can establish all of the elements of the SBP former spouse election provisions.[18]

### III.  CONCLUSION

For the reasons set forth above, the court **DENIES** defendant's motion to dismiss. Defendant shall file an answer to plaintiff's complaint within the time period set forth in RCFC 12(a)(4)(A).

**IT IS SO ORDERED.**

s/ Margaret M. Sweeney
MARGARET M. SWEENEY
Judge

---

[18]  Because the court is unable at this juncture to determine whether plaintiff has established a proper election of former spouse coverage, it cannot address defendant's argument invoking the Appropriations Clause of the United States Constitution.  <u>See</u> Mot. 10-11.  The Appropriations Clause prohibits the payment of public funds without congressional authorization.  U.S. Const. art. I, § 9, cl. 7 ("No Money shall be drawn from the Treasury, but in Consequence of Appropriations made by Law . . . .").  Here, Congress has authorized the payment of SBP annuities to qualifying individuals.  Because the court has yet to determine whether plaintiff is a qualifying individual, the Appropriations Clause cannot foreclose plaintiff's claims.