# In the United States Court of Federal Claims

No. 08-745C
(Filed: May 29, 2013)

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | | |
|---|---|---|
| ROSA D. BONEWELL, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | RCFC 52.1(c); Survivor Benefit Plan, 10 |
| | * | U.S.C. §§ 1447-1455; Former Spouse |
| THE UNITED STATES, | * | Election; Office of Personnel Management |
| | * | v. Richmond; Substantial Compliance With |
| Defendant, | * | Statute and Regulations; Injustice; Bad |
| | * | Faith; Inducement |
| and | * | |
| | * | |
| CARMEN TITONG-BONEWELL, | * | |
| | * | |
| Defendant-Intervenor. | * | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Chester H. Morgan, II, Colorado Springs, CO, for plaintiff.

John S. Groat, United States Department of Justice, Washington, DC, for defendant.

Patrick R. Quigley, Washington, DC, for defendant-intervenor.

## OPINION AND ORDER

**SWEENEY**, Judge

In this case, plaintiff Rosa D. Bonewell, as the former spouse of a deceased United States Air Force ("Air Force") retiree, claims that she is entitled to annuity payments through the military's Survivor Benefit Plan ("SBP"). Defendant and defendant-intervenor, Carmen Titong-Bonewell, the retiree's widow, dispute plaintiff's claim. In two earlier opinions, the court concluded that it possesses jurisdiction over plaintiff's claim for an SBP annuity and that plaintiff has stated a claim upon which the court could grant relief.[1] Now before the court is plaintiff's renewed motion for judgment on the administrative record. For the reasons set forth below, the

---

[1] See Bonewell v. United States, 95 Fed. Cl. 752 (2010); Bonewell v. United States, 87 Fed. Cl. 413 (2009).

court denies plaintiff's motion.  In addition, the court <u>sua</u> <u>sponte</u> dismisses the remainder of plaintiff's complaint for lack of jurisdiction.

## I. BACKGROUND

### A. Statutory and Regulatory Framework

The SBP was enacted by Congress in 1972 to provide benefits to surviving spouses and dependent children of deceased military retirees.  Act of Sept. 21, 1972, Pub. L. No. 92-425, 86 Stat. 706 (codified as amended at 10 U.S.C. §§ 1447-1455 (2000)).[2]  In 1982, Congress expanded the list of potential SBP beneficiaries to include former spouses.  <u>See</u> Uniformed Services Former Spouses' Protection Act, Pub. L. No. 97-252, § 1003, 86 Stat. 706, 735-36 (1982).  A service member who is married or has dependent children at retirement is automatically enrolled in the SBP unless he or she affirmatively elects not to participate.  10 U.S.C. § 1448(a)(2).  The retired pay of SBP participants is reduced in accordance with the type and number of designated beneficiaries.  <u>Id.</u> § 1452.  Upon the death of an SBP participant, his or her beneficiaries receive monthly annuity payments.  <u>Id.</u> § 1450(a).

A former spouse can receive an SBP annuity through one of two methods:  an election of former spouse coverage pursuant to 10 U.S.C. § 1448(b) or a deemed election of former spouse coverage pursuant to 10 U.S.C. § 1450(f)(3).  Only the first method is at issue in this case.[3]  <u>See</u> <u>Bonewell</u>, 95 Fed. Cl. at 726 & n.12.  Under that method, the service member bears the burden of making the election.  10 U.S.C. § 1448(b)(3)(A)(i).  "Any such election must be written, signed by the person making the election, and received by the Secretary concerned within one year after the date of the decree of divorce, dissolution, or annulment."  <u>Id.</u> § 1448(b)(3)(A)(iii).  Further:

---

[2]  Unless otherwise stated, all citations to 10 U.S.C. §§ 1447-1455 are to the 2000 version of the United States Code, the law in effect when the relevant events in this case occurred.

[3]  Under the second method, a deemed election, the appropriate service must receive "[a] written request, in such manner as the Secretary shall prescribe, from the former spouse concerned requesting that such an election be deemed to have been made," and either "a copy of the court order, regular on its face, which requires such election or incorporates, ratifies, or approves the written agreement" of the service member to make an election in favor of the former spouse or "a statement from the clerk of court (or other appropriate official)" that the agreement to make the election "has been filed with the court in accordance with applicable State law."  10 U.S.C. § 1450(f)(3)(A).  The request must be received "from the former spouse . . . within one year of the date of the court order or filing involved."  <u>Id.</u> § 1450(f)(3)(C).  In this case, plaintiff did not submit, prior to her former husband's death, any documentation to the Air Force that could constitute a request for a deemed election of former spouse coverage, such as a written request, a copy of the separation agreement, or a copy of the Decree of Dissolution.  <u>See</u> <u>Bonewell</u>, 95 Fed. Cl. at 726 & n.12.

> A person who elects to provide an annuity to a former spouse . . . shall, at the time of making the election, provide the Secretary concerned with a written statement (in a form to be prescribed by that Secretary and signed by such person and the former spouse) setting forth–
>
>> (A) whether the election is being made pursuant to the requirements of a court order; or
>>
>> (B) whether the election is being made pursuant to a written agreement previously entered into voluntarily by such person as a part of, or incident to, a proceeding of divorce, dissolution, or annulment and (if so) whether such voluntary written agreement has been incorporated in, or ratified or approved by, a court order.[4]

Id. § 1448(b)(5) (footnote added).  The pertinent regulation setting forth the form of the required written statement indicates that an Air Force retiree must submit DD Form 2656-1, Survivor Benefit Plan (SBP) Election for Former Spouse Coverage, and a copy of the divorce decree to elect coverage for a former spouse.[5]  Air Force Instruction 36-3006, supra note 4, at ¶ 3, Attach.

---

[4]  In contrast to the requirement in 10 U.S.C. § 1448(b)(5) that the "Secretary concerned" prescribe the form of the written statement, 10 U.S.C. § 1455 requires the President to prescribe SBP regulations.  The President delegated this authority to the Secretary of Defense, see Proclamation No. 11687, 37 Fed. Reg. 21479 (Oct. 12, 1972), who thereafter issued SBP regulations, see Department of Defense Directive 1332.27, Survivor Benefit Plan (Jan. 4, 1974). To implement Department of Defense Directive 1332.27, the Secretary of the Air Force issued Air Force Policy Directive 36-30, Military Entitlements (Aug. 2, 1993), which in turn was implemented by Air Force Instruction 36-3006, Survivor Benefit Plan (SBP) and Supplemental Survivor Benefit Plan (SSBP) (Active, Guard, Reserve, and Retired) (July 1, 1996).  Thus, the requirements of both 10 U.S.C. § 1448(b)(5) and 10 U.S.C. § 1455 have been satisfied.

[5]  Rather than citing the relevant Air Force regulation, the parties cite the following: United States Department of Defense Financial Management Regulation 7000.14-R, vol. 7B, ch. 43 (Sept. 1999) ("FMR").  With respect to the election of former spouse coverage under the SBP, FMR section 430503 provides:

> When a member elects former spouse coverage, the member and the former spouse must complete an election statement indicating whether the election is being made pursuant to the requirements of a court order or by a voluntary written agreement.  If the member entered into a voluntary written agreement as a part of, or incident to, a proceeding of divorce, dissolution or annulment, the member must indicate on the written statement whether the agreement has been incorporated in, or ratified or approved by, a court order.

14. Information to be provided on the DD Form 2656-1 includes the retiree's name and social security number; the former spouse's name, birth date, and social security number; the dates of marriage and divorce; and the signatures of both the service member and the former spouse. DD Form 2656-1 (Apr. 1999).

## B. Factual and Procedural History

On July 6, 1968, plaintiff married Technical Sergeant Rodney L. Bonewell ("TSgt Bonewell") in the Republic of the Philippines, where TSgt Bonewell was stationed with the Air Force.[6]  Compl. ¶ 6; JA 12, 50. During the course of their thirty-two-year marriage, plaintiff and TSgt Bonewell had two children:  a son and a daughter. JA 98. TSgt Bonewell retired from active duty on August 1, 1984, after twenty years of service. Id.; Compl. ¶ 6. Upon his retirement, TSgt Bonewell elected to participate in the SBP, providing coverage for his children, but not plaintiff. JA 29, 32. Subsequently, on March 31, 1993, TSgt Bonewell elected to provide coverage for both plaintiff and their children. Id. at 98-100. His retired pay was reduced accordingly. Compl. ¶ 6.

Plaintiff and TSgt Bonewell legally separated on October 27, 2000. JA 15-18. Then, on May 10, 2001, they filed a pro se petition to dissolve their marriage. Id. at 13-14. The Decree of Dissolution, which incorporated the prior separation agreement, was issued by the El Paso County, Colorado District Court on May 11, 2001. Id. Paragraph eight of the separation

---

In addition, FMR section 430303 requires a service member to provide the following information when making an election:  the service member's name, social security number, birth date, and retirement date; the base amount of requested coverage; the former spouse's name, social security number, and birth date; the dates of marriage and divorce; and the signatures of both the service member and the former spouse. The requirements described in the FMR generally conform to the requirements set forth in the statute and relevant Air Force regulation.

[6]  Although the court included a comprehensive statement of facts in its November 4, 2010 Opinion and Order, it presents the facts again, with appropriate modifications, to provide a backdrop for the current motion. The court derives the facts in this section from plaintiff's complaint ("Compl."), the exhibits attached to the complaint ("Compl. Ex."), the portion of the joint appendix ("JA") constituting the record before the Air Force Board for Correction of Military Records ("AFBCMR"), and the two supplements to the AFBCMR's record–the supplemental appendix filed with the court on September 27, 2011 ("SA"), and the exhibit attached to defendant's June 18, 2012 status report ("Def.'s Ex."). Defendant's exhibit is not paginated; thus, the court uses the page numbers assigned by the court's electronic filing system in its citations. Moreover, any facts derived solely from the complaint or the exhibits attached to the complaint are included only to form a complete narrative, and will not be used as a basis for ruling on plaintiff's renewed motion for judgment on the administrative record. See Walls v. United States, 582 F.3d 1358, 1368 (Fed. Cir. 2009) (indicating that "review of a military corrections board is limited to the administrative record").

agreement provided:  "The pension and retirement accounts will be divided as follows:  Wife shall receive $472.54 per month of Husband's Air Force Retirement and SSP [sic] benefits."  Id. at 16.  Accordingly, on May 16, 2001, TSgt Bonewell submitted DD Form 2558, Authorization to Start, Stop or Change an Allotment, to the Defense Finance and Accounting Service ("DFAS"), requesting that plaintiff receive a monthly allotment of $472.54 from his retired pay. Id. at 95.  On the form, TSgt Bonewell indicated that the allotment was being made pursuant to a "court ordered divorce settlement,"[7] id., and the evidence reflects that TSgt Bonewell submitted a portion of the Decree of Dissolution with his DD Form 2558.  Specifically, TSgt Bonewell attached to his DD Form 2558 a copy of the notice setting the final hearing on the dissolution and a copy of the page from the separation agreement containing paragraph eight.[8]  Id. at 95-97 (containing the three pages); accord id. at 32 (containing a February 9, 2004 advisory opinion from the Office of the Judge Advocate General indicating that TSgt Bonewell submitted the Decree of Dissolution/separation agreement to the DFAS); SA 67-69 (containing the three pages, each bearing the same unique identifier (i.e., "LKY3070300375") and a consecutive page

---

[7]  Despite this notation suggesting that he was no longer married, TSgt Bonewell's retired pay continued to reflect a deduction for SBP spouse coverage.  JA 67.

[8]  In 2006, the Air Force claimed, in contrast to its earlier position, that "[a]lthough the allotment request form acknowledges the divorce decree, [it had] no basis to know whether Rodney Bonewell submitted a full or partial copy of his divorce decree and separation agreement along with the allotment authorization."  JA 93 (containing a July 31, 2006 advisory opinion from the DFAS).  According to the DFAS:

> [T]he copy of the member's DD 2558 . . . was entered into DFAS'[s] computerized records on July 3, 2003, and was copied into the pay system along with two random pages from [the] divorce proceedings in Colorado.  . . .  We have no basis to know whether these two pages from different parts of [the] divorce proceeding were submitted by the member along with the original allotment authorization or why these documents were imaged into the record over two years after the allotment form was executed.

Id.; accord id. at 83 (containing a February 17, 2006 advisory opinion from the Office of the Judge Advocate General); cf. id. at 83 n.7 (indicating that the DFAS informed the Office of the Judge Advocate General that the "May 2001 voluntary allotment form appears in the DFAS records 'only because someone submitted it to DFAS in July 2003'").  Although defendant recognized the conflicting nature of the evidence, it ultimately decided not to "'contest that the three pages in question were apparently received by DFAS in May 2001.'"  Bonewell, 95 Fed. Cl. at 755 n.4 (quoting defendant's reply brief).  Given this representation, the court expressed concern in its November 4, 2010 Opinion and Order that at least two of the advisory opinions solicited by the AFBCMR were based on a faulty premise–that the DFAS did not receive part of the Decree of Dissolution along with the DD Form 2558–and resulted in the denial of a benefit to plaintiff that TSgt Bonewell specifically agreed to and provided for in the Decree of Dissolution.

-5-

designation (i.e., "Page 1 of 3," "Page 2 of 3," or "Page 3 of 3") along the top of the page); see also JA 97 (containing the page from the separation agreement on which paragraph eight has been highlighted).  The DFAS processed the DD Form 2558 and plaintiff began receiving a monthly payment of $472.54.  JA 93.

Although TSgt Bonewell reallocated a portion of his retired pay in conformance with the Decree of Dissolution, he did not make a separate, specific request to the DFAS to change his SBP coverage for plaintiff from "spouse" to "former spouse."  Id. at 83, 92-94.  TSgt Bonewell subsequently married defendant-intervenor on August 13, 2001.  Id. at 116.  He did not notify the DFAS of his new marriage or attempt to change his election from plaintiff to his new spouse as the proper recipient of the SBP annuity.[9]  Id. at 83, 94.

TSgt Bonewell died on April 29, 2003.  Id. at 19.  Thereafter, on May 27, 2003, plaintiff submitted an application to receive the SBP annuity awarded to her pursuant to the Decree of Dissolution, along with TSgt Bonewell's death certificate.[10]  Id. at 83, 109-10.  The DFAS denied plaintiff's application.  In a June 19, 2003 letter, the London, Kentucky office of the DFAS indicated that the "[r]ecords on file at" that location showed that TSgt Bonewell "elected to participate in the [SBP] . . . for spouse and child coverage" and that because plaintiff was "not married to Mr. Bonewell at the time of his death," it was denying her application for the SBP annuity.  Id. at 24.  Consequently, when the DFAS received an application for the SBP annuity from defendant-intervenor in July 2003, appended to which was a copy of the Decree of Dissolution, it granted the application and began making monthly annuity payments to her.[11]  Id. at 83, 116-17.

---

[9]  In contrast, TSgt did take such steps with his subsequent employer.  After retiring from the military, TSgt Bonewell entered civilian employment with the Air Force.  JA157, 159; SA 64.  On September 24, 2001, he advised the United States Office of Personnel Management that he had divorced in May 2001 and remarried in August 2001.  JA 156.  Subsequently, in November 2001, he began submitting the forms and supporting documents necessary to designate defendant-intervenor as his beneficiary to receive his Federal Employees' Retirement System death benefit and the proceeds of his Federal Employee Group Life Insurance policy.  Id. at 157-63.

[10]  Plaintiff also submitted a claim for unpaid compensation.  JA 111-12.  In a June 14, 2003 letter, the Cleveland, Ohio office of the DFAS indicated that because the "[r]ecords on file at" that location showed that TSgt Bonewell "designated a beneficiary to receive unpaid compensation due upon his/her death," it was denying plaintiff's "claim for arrears . . . ."  Id. at 108.

[11]  Defendant-intervenor had previously called the DFAS to inquire about the SBP annuity on May 9, 2003.  JA 83.

Plaintiff ultimately retained an attorney, who, in an October 2, 2003 letter to the DFAS, sought reconsideration of the June 19, 2003 denial.  Id. at 22-23.  The DFAS responded on October 6, 2003, as follows:

> A spouse loses eligibility as an SBP beneficiary upon divorce.  It is important to know that there is no provision in the SBP, which makes former spouse coverage an automatic benefit.  The only means by which the divorced spouse may receive a survivorship annuity is if former spouse coverage is elected/deemed in writing within one year of divorce.  A court order cannot, by itself, be used to institute coverage.  The service member must submit a signed election request, before coverage can be established.

> You divorced the member on May 11, 2001.  The former spouse and the member had until May 11, 2002 to inform DFAS-Cleveland of the divorce and state your deemed election as former spouse to continue the SBP coverage.

> Our records do not reflect a written request from you or the service member within one year of your divorce date.  Therefore, you are not an eligible beneficiary for SBP, effective May 11, 2001.

Id. at 25.

On November 14, 2003, plaintiff submitted an Application for Correction of Military Records to the AFBCMR in a further attempt to obtain the SBP annuity.  Id. at 47-49.  The AFBCMR returned the application to plaintiff on December 12, 2003, explaining that it could not "rule on a disputed claim to a benefit only one person can receive."  Id. at 26.  Dissatisfied with this response, on January 9, 2004, plaintiff entreated the Office of the Judge Advocate General directly for assistance.  Compl. ¶ 10.  As a result, the AFBCMR changed course and decided to consider plaintiff's application.  Id.

The AFBCMR sought two advisory opinions.  The first was prepared by the Air Force Personnel Center on January 29, 2004.  JA 67-68.  It noted that the relevant law required an election or deemed election of former spouse coverage within one year of a divorce.  Id. at 67.  However, it found that there was "no evidence" that TSgt Bonewell requested that plaintiff's "SBP coverage be terminated following their divorce" and that "it would be inappropriate to deny her an asset the court intended she receive."  Id. at 68.  The Air Force Personnel Center recommended that although there was "no evidence of Air Force error in this case," TSgt Bonewell's military record should be corrected to reflect that on May 12, 2001, "he submitted a valid election for former spouse and child coverage based on full retired pay, naming Rosa D. Bonewell as the eligible beneficiary."  Id.

The second advisory opinion was prepared by the Office of the Judge Advocate General on February 9, 2004.  Id. at 63-65.  After reiterating the applicable statutory law, it framed the

relevant issue as "whether the filing of the divorce decree, which included the separation agreement awarding the applicant SBP benefits, with DFAS meets the statutory requirements of 'a written request, in such a manner as the Secretary shall prescribe . . . requesting that such an election be deemed to have been made,'" such that a deemed election of former spouse coverage could be established.  Id. at 64 (quoting 10 U.S.C. § 1450(f)(3)(A)(i)).  It concluded that based upon the plain statutory language, as reinforced by two decisions from the United States Court of Federal Claims ("Court of Federal Claims"), "the written request and court order are two different items and the latter does not incorporate the former."  Id. at 64-65.  Accordingly, the Office of the Judge Advocate General recommended the denial of plaintiff's application, noting that plaintiff's complaint was "with the estate of her former spouse and her only recourse [might] be to bring suit against the estate or the person now receiving the SBP annuity."  Id. at 65.

Plaintiff responded to this latter advisory opinion on April 14, 2004.  Id. at 36-38.  In her response, she distinguished the cited Court of Federal Claims cases, disputed the suggestion of an available alternative remedy, and took issue with the lack of discussion of the AFBCMR's equitable powers.  Id.  In addition, she emphasized the extent to which an injustice had occurred in her case.  Id.  Ultimately, plaintiff concurred with the conclusion of the Air Force Personnel Center in the first advisory opinion that the interests of justice would be best served by correcting TSgt Bonewell's military record to reflect a timely election of former spouse coverage.  Id. at 37-38.

The AFBCMR issued its decision on October 14, 2004.  Id. at 5-9.  After reviewing the underlying facts, the advisory opinions, and plaintiff's response to the advisory opinions, it concluded:

> Insufficient relevant evidence has been presented to demonstrate the existence of an error or an injustice.  Through counsel the applicant essentially contends the submission of the divorce decree to the [DFAS] was sufficient to change the SBP spouse coverage to former spouse coverage.  Counsel argues that by providing the divorce decree, which incorporated the separation agreement, within one year of its issuance[, she] satisfied the statutory "deemed election" written request required of former military spouses pursuant to the law.  However, after thoroughly reviewing the evidence of record and the applicant's submission, we agree with the opinion and recommendation of the . . . Office of the Judge Advocate General, in his memorandum of February 9, 2004, on the subject, and adopt his rationale as the basis for our conclusion that the applicant has not been the victim of an error or injustice.  Specifically, the Chief notes by the statute's plain wording, the written request and the court order are two different items and the latter does not incorporate the former.  Therefore, in the absence of evidence to the contrary, we find no compelling basis to recommend granting the relief sought in this application.

Id. at 8-9.

Unsuccessful before the AFBCMR, plaintiff filed suit in the United States District Court for the District of Colorado ("district court") on July 19, 2005, seeking legal and equitable relief under the Little Tucker Act, 28 U.S.C. § 1346 (2000).  JA 71-79.  Plaintiff alleged that the AFBCMR's denial of her claim was arbitrary, capricious, an abuse of discretion, and without basis in law or fact.  Id.  After filing suit, plaintiff entered into settlement negotiations with Assistant United States Attorney Kurt Bohn, who was coordinating with the Office of the Judge Advocate General's litigation division, represented by Lieutenant Colonel Joseph Wendelberger.  Compl. ¶ 14.  Lieutenant Colonel Wendelberger suggested "that in view of recent cases coming from" the Court of Federal Claims, were plaintiff to "voluntarily dismiss her suit from district court[,] the AFBCMR would reconsider its earlier denial and [the Office of the Judge Advocate General] would recommend relief."  Id.  Based upon this representation, plaintiff voluntarily dismissed her complaint in district court.  Id. ¶ 15; JA 69-70.  The Stipulation for Dismissal indicated that the Air Force "agreed to reconsider" the AFBCMR's denial of plaintiff's application "in light of the recent case law," which took "into consideration the equitable factors overlooked or not applied in the AFBCMR's original decision."  JA 69-70.

On November 23, 2005, plaintiff resubmitted her claim to the AFBCMR.  Id. at 43-46.  The AFBCMR again solicited an advisory opinion from the Office of the Judge Advocate General, asking whether, in light of the new decisions from the Court of Federal Claims, the Office of the Judge Advocate General would amend the position set forth in its February 9, 2004 advisory opinion.  Id. at 81.  The Office of the Judge Advocate General issued its advisory opinion on February 17, 2006.  Id. at 81-85.  It determined, after consultation with the DFAS, that the facts of the case appeared to be different from what it believed to be the case two years previously.  Id. at 82-84.  Specifically, it rejected its previous belief that TSgt Bonewell had submitted a copy of some or all of the Decree of Dissolution with his DD Form 2558, instead asserting that it appeared that TSgt Bonewell's widow first submitted the "divorce paperwork" to the DFAS in July 2003 with her application to receive the SBP annuity.  Id. at 83.  Based upon this new information, the Office of the Judge Advocate General suggested that the appropriate inquiry was whether the AFBCMR should reconsider plaintiff's application "when the member submitted to DFAS a request for voluntary allotment to his former spouse referring to 'court ordered divorce settlement,' but not attaching the court order or mentioning the SBP benefits."  Id. at 82.  However, the Office of the Judge Advocate General did not formally answer this inquiry.  Instead, it provided:

> We believe that a discussion of the applicability of the two recent court cases to this case is premature until a better factual record is established.  If Rosa Bonewell did not file any paperwork with DFAS until after her [ex-]husband's death, it seems to us that neither case would apply.  Additionally, even if the requisite paperwork was filed, it now appears that there is another interested party in TSgt Bonewell's SBP.  If that turns out to be the case, the Board should request an advisory opinion on the state of the law on the propriety of acting on the applicant's request.

Id. at 85.  Thus, the Office of the Judge Advocate General recommended that the AFBCMR "reopen this matter to obtain an advisory opinion from DFAS to obtain documentary support for the additional facts DFAS has provided this office and to establish a more accurate record upon which to base the Board's decision," and represented that once the facts had been more clearly established, it would "be happy to provide an opinion at that time on the state of the law concerning the various issues in this matter."  Id.  Plaintiff responded to this advisory opinion on March 24, 2006, arguing that (1) the AFBCMR was bound by the record considered in rendering its October 14, 2004 decision; (2) even if the new facts were true, the DFAS's unilateral changing of TSgt Bonewell's beneficiary was improper; and (3) the equities still remained with plaintiff.  Id. at 87-91.

As suggested by the Office of the Judge Advocate General, the AFBCMR requested an advisory opinion from the DFAS, which the DFAS issued on July 31, 2006.  Id. at 92-94.  As alluded to in the Office of the Judge Advocate General's advisory opinion, the DFAS reevaluated the facts and determined that there was "no evidence that would substantiate Rosa D. Bonewell's claim . . . that the Decree of Dissolution and Separation Agreement were timely submitted to DFAS in order that she begin receiving her portion of Rodney Bonewell's retired pay."  Id. at 93.  Indeed, as noted above, the DFAS asserted that it had "no basis to know whether Rodney Bonewell submitted" any part of the Decree of Dissolution or the incorporated separation agreement prior to July 3, 2003, the date it contends that the DD Form 2558 and the two pages from the dissolution proceedings were entered into its computerized records.  Id.  After this supposed "clarifi[cation]" of the fact record,[12] the DFAS opined that the Court of Federal Claims decisions relied upon by plaintiff were distinguishable from plaintiff's case.  Id. at 94.

In light of the DFAS's advisory opinion containing the putative "clarified" facts, the AFBCMR requested another advisory opinion from the Office of the Judge Advocate General.  In its November 17, 2006 memorandum, the Office of the Judge Advocate General, incorporating its February 9, 2004, and February 17, 2006 advisory opinions, concluded that where a "former spouse wants her court-ordered SBP benefits, and the new spouse presumably believes she remains entitled to the SBP benefits," the AFBCMR was "not the proper forum . . . ."  Id. at 125.  It explained:

> While the AFBCMR is expected to honor unambiguous court orders timely filed pursuant to federal law and may recognize undisputed court orders as evidence of member intent, its role is not to construe or enforce court orders, reconcile conflicting court orders and statutes, or decide, in effect, claims disputes between two or more private parties.

---

[12]  The court notes that all of the "clarified" facts were known to the DFAS at the time that plaintiff first filed her application to correct TSgt Bonewell's military record with the AFBCMR.  Moreover, plaintiff avers that she was not provided with the records supporting these "clarified" facts while the AFBCMR was first considering her application.  Compl. ¶ 16.

Id. at 13-14.  Accordingly, it concluded that "[t]he AFBCMR should not consider cases involving disputed claims unless a court of competent jurisdiction has ruled in the case or requires the AFBCMR to make a determination in the case." Id. at 14.

On March 5, 2007, plaintiff sent the AFBCMR two affidavits, one that she executed and the other executed by her son. See Compl. Ex. 1 at 9-10 (reflecting that plaintiff's counsel forwarded the two affidavits to the AFBCMR); see also SA 64-66 (containing the affidavits). Plaintiff's affidavit was captioned as an "amended and supplemental affidavit," and was intended "to correct errors in some of the dates in [a] previous affidavit . . . and to supplement what [she knew] about what was done to ensure that DFAS was on notice about the divorce and the agreement that [she] was to get SBP." SA 64.  Her original affidavit, executed on March 15, 2006, provided:

> Right after our divorce I started receiving the money we had agreed on through an automatic deposit from DFAS.  Because it was the correct amount and started pretty much right after the divorce, I believed that Rodney had kept his promise to send the right paperwork to Finance.
>
> . . . .
>
> . . . I do not know what he sent in to DFAS when we were divorced, but he knew that he was supposed to send in the divorce decree when we were divorced, he promised me he'd do it, and when I started receiving the retired pay I believed he had.  I had no reason to believe otherwise.

Id. at 63.  In her second affidavit, plaintiff stated:

> I believed then and now that DFAS had a copy of the divorce decree.  In the first place, Rodney told me that he had sent everything in.  He assured me that I would get SBP, not just after the divorce, but again when we knew he was terminal and I was taking care of him, he repeatedly assured me that he had made sure I'd get SBP and that everything was in place.[13]

---

[13]  Plaintiff stated in her second affidavit that she, and not defendant-intervenor, was caring for TSgt Bonewell because defendant-intervenor resided in the Philippines.  SA 64.  She explained:

> Unfortunately, my [then-]husband began going on the internet and met somebody named Carmen. . . .
>
> . . . .
>
> Before we were divorced, my husband had gone to the Philippines and

Id. (footnote added).  Plaintiff's son confirmed her recollection:

> In November of 2002 [my father] stayed with me at my residence, and the topic
> came up.  My dad told me that whatever happened he'd make sure that mom was
> cared for, and that she was already getting part of his military retired pay and that
> she'd get the Survivors Benefit Plan if he passed away.  To the best of my
> recollection his specific words were "Your mother will be getting my Air Force
> retirement." . . .
>
> . . . . [A]round February of 2003, when he knew that he was probably
> terminal, we talked about it again.  My uncle, . . . (my dad's brother), had been
> asking me whether my mom would be okay financially when my dad died.  . . .
> Dad again repeated that there was nothing to worry about, that he had already
> taken care of everything.

Id. at 66.  The AFBCMR did not consider any of these three affidavits in ruling on plaintiff's
application.[14]  See JA 171 (listing the exhibits considered by the AFBCMR); see generally id. at
1-172 (containing the administrative record, which does not include the affidavits).

On April 11, 2007, the AFBCMR forwarded to plaintiff two memoranda for review and
comment.  Id. at 128.  The first memorandum was prepared by the Air Force Deputy General
Counsel for National Security and Military Affairs on October 18, 2006, and contained "general
guidance" concerning the AFBCMR's authority "to correct an error or remove an injustice in
cases where there are competing interests for [SBP] benefits."  Id. at 134.  He explained:

> actually met Carmen.  He then returned to the Philippines after the divorce in
> August 2001.  Carmen did not return to the States with him.  Rodney made
> various trips to and from the Philippines, but in December of 2002 after he
> returned he moved in with our son . . . .  He became very ill the following spring
> and the doctor told us that he was dying of lung cancer.  Both children and I
> stayed with him and tended to him.  We tried to get Carmen, who continued to
> live in the Philippines, to come to visit him, and finally she did come sometime in
> March.  He died on April 29, 2003.

Id.  Defendant-intervenor indicated, in a May 1, 2007 letter she sent to the AFBCMR, that she
was unable to care for TSgt Bonewell because she was "waiting for [her] papers to enter . . . the
United States legally."  JA 153-54.

---

[14]  In fairness, there is no evidence before the court that the AFBCMR possessed
plaintiff's original affidavit, and only extrarecord evidence that the AFBCMR possessed the
other two affidavits.

In our view, as a general proposition, the AFBCMR has the authority to correct a record in an SBP case where it considers it necessary to do so to correct an error or remove an injustice.  In such cases, "deemed" elections may not necessarily be outcome-determinative.  Legal authority in this area must be determined on a case-by-case basis . . . .

We have long maintained that the Board should exercise prudence when the consequence of correcting a record may be unfavorable to another person. While not a strict statutory prohibition, we nevertheless believe that in cases where there are possible competing interests, there should be a rebuttable presumption that no record correction should be made if the result would be unfavorable to another person eligible to seek relief from the [AF]BCMR.

In such circumstances, the Board must carefully weigh the equities of the competing interests (and we recommend each side be given the opportunity to comment).  Only in the most extraordinary of circumstances, where the Board determines that equity demands a correction be made to remove an injustice, even though such a correction may be unfavorable to another person, should the Board make a correction.

Id.  The second memorandum was an advisory opinion prepared by the Office of the Judge Advocate General on October 19, 2006, for another case before the AFBCMR.  Id. at 129-33.  In that case, the AFBCMR inquired whether a military record should be corrected to reflect SBP coverage for a former spouse despite the DFAS having established the service member's widow as the SBP beneficiary.  Id. at 129.  Based on the incomplete facts it was provided, the Office of the Judge Advocate General presumed that neither the service member nor the former spouse "made a proper former spouse SBP election within a year" of the court order directing the member to make the election, thus making the widow the "lawful SBP beneficiary" by operation of law.  Id. at 131.  Based on this presumption, the Office of the Judge Advocate General concluded that because the widow had "a vested interest in the SBP," the former spouse could not "summarily take away her lawful designation as an SBP beneficiary by seeking a correction of the member's military records."  Id. at 131-32.  Moreover, it reiterated its contention that the AFBCMR was not the proper forum to resolve such a contested case.  Id. at 132.  Ultimately, the Office of the Judge Advocate General perceived no error or injustice that could be corrected by the AFBCMR and suggested that the former spouse's recourse existed elsewhere.  Id.

The AFBCMR forwarded one final submission to plaintiff for her review and comment on June 6, 2007:  a May 1, 2007 letter, with attachments, from defendant-intervenor.  Id. at 166; see also id. at 152-65 (containing the letter and attachments).  In her letter, defendant-intervenor indicated that it was her position that she was the proper SBP beneficiary because the necessary paperwork on plaintiff's behalf was not submitted to the DFAS within the one-year time limit. Id. at 152, 154.  Based upon this letter, the AFBCMR "encouraged settlement" between plaintiff

and defendant-intervenor, but defendant-intervenor "did not reply to Plaintiff's repeated efforts to contact her by mail and by e-mail." Compl. ¶ 22.

The AFBCMR rendered its decision on plaintiff's resubmitted application on March 20, 2008. JA 167-72. After summarizing the additional facts and advisory opinions added to the record subsequent to its October 14, 2004 decision, with the exception of the affidavits of plaintiff and her son, the AFBCMR concluded that there was "no evidence of an error warranting corrective action in this case" and that it was not "persuaded by counsel's assertions that the applicant has been the victim of an injustice." Id. at 170. In support of its conclusion, the AFBCMR noted that there was no evidence of a timely, proper election of former spouse coverage under the SBP and discounted the possibility that, upon the dissolution of his marriage, TSgt Bonewell submitted the relevant portion of his Decree of Dissolution with his DD Form 2558. Id. Moreover, the AFBCMR concluded that "taking action 'to preclude the possibility' of an injustice" to plaintiff would "create an injustice to another"–defendant-intervenor. Id. In sum, the AFBCMR found that plaintiff had "failed to sustain her burden of proof regarding the existence of an error or injustice" and that the intervening case law from the Court of Federal Claims relied upon by plaintiff was distinguishable. Id.

Plaintiff filed the instant suit on October 20, 2008, asserting three claims for relief. In her first claim, plaintiff avers that the AFBCMR's decision denying her initial application was arbitrary, capricious, and without a basis in law and fact. Compl. ¶¶ 24-26. In her second claim, plaintiff contends that the AFBCMR's decision denying her renewed application, after the Office of the Judge Advocate General's litigation division induced her to dismiss her district court action by assuring her a favorable recommendation to the AFBCMR, was arbitrary, capricious, contrary to law and equity, in bad faith, and an abuse of discretion. Id. ¶¶ 27-33. In her third claim, plaintiff asserts that the Air Force acted in bad faith by inducing her to dismiss her federal court action by assuring her a favorable recommendation to the AFBCMR. Id. ¶¶ 34-38. As remedies, plaintiff seeks a declaration that she is the proper beneficiary of the SBP annuity; back SBP annuity payments beginning from May 1, 2003; the correction of TSgt Bonewell's Air Force records to reflect that the DFAS was timely notified of the former spouse election; attorney's fees; and "[s]uch other and further relief as the Court deems just and proper under the circumstances." Id. ¶¶ (1)-(5).

On December 19, 2008, defendant moved to dismiss plaintiff's complaint for lack of jurisdiction pursuant to Rule 12(b)(1) of the Rules of the United States Court of Federal Claims ("RCFC"). The court denied defendant's motion in a May 26, 2009 Opinion and Order. See Bonewell, 87 Fed. Cl. at 413. TSgt Bonewell's widow subsequently intervened in the action. She and defendant then moved to dismiss plaintiff's complaint for failure to state a claim upon which relief could be granted and the parties cross-moved for judgment on the administrative record. In a November 4, 2010 Opinion and Order, the court denied all of the motions and remanded the case to the AFBCMR for reconsideration of plaintiff's application. Bonewell, 95 Fed. Cl. at 752. Specifically, the court directed the AFBCMR to

-14-

(1) obtain new advisory opinions that assume that TSgt Bonewell submitted part of his Decree of Dissolution to the DFAS in May 2001 with his DD Form 2558; (2) consider all of the evidence that was submitted by plaintiff, including her affidavit and the affidavit of her son; (3) decide whether TSgt Bonewell substantially complied with 10 U.S.C. § 1448(b) and explain why or why not; and (4) decide whether, given the thirty-two-year marriage between plaintiff and TSgt Bonewell and TSgt Bonewell's specific intent to provide the SBP annuity to plaintiff, equity demands a correction be made to remove an injustice to plaintiff, and explain why or why not.

Id. at 769.

In compliance with the court's remand order, the AFBCMR solicited a new advisory opinion from the Air Force Review Boards Agency. The legal advisor for that agency recommended in a February 28, 2011 advisory opinion that the AFBCMR should "find there was not substantial compliance with 10 U.S.C., Section 1448(b)," and "advise the court that the equities are in favor of the applicant, but that absent consent of the second spouse," it "decline[s] to correct the record under the authority of 10 USC 1552." SA 51. Plaintiff submitted a response to this advisory opinion on March 25, 2011, challenging the agency's recommendations that the AFBCMR should find that TSgt Bonewell did not substantially comply with 10 U.S.C. § 1448(b) and that the AFBCMR should decline to exercise its equitable power to correct TSgt Bonewell's military record. Id. at 53-62.

The AFBCMR did not follow the recommendations contained in the advisory opinion. Rather, in a July 7, 2011 decision, it concluded that "[s]ufficient relevant evidence has been presented to demonstrate the existence of an injustice warranting relief" because, it believed, TSgt Bonewell's "actions complied with the intent of the provisions of Title 10 U.S.C. 1448(b) and clearly indicate[d] his desire to provide former-spouse SBP coverage for the applicant." Id. at 16. It gave "great deference" to the advisory opinion and recognized the existence of contrary AFBCMR precedent. Id. It stated, however, that justice dictated that it rule in plaintiff's favor, and therefore recommended that TSgt Bonewell's records be corrected "to show that on 12 May 2001, he elected to change his Survivor Benefit Plan (SBP) coverage from 'spouse' to 'former-spouse' based on full retired pay, naming Rosa D. Bonewell as the eligible beneficiary." Id. at 17. The recommendation of the AFBCMR panel was unanimous. Id.

Because the AFBCMR's determination departed from the recommendation contained in the advisory opinion, the record of proceedings was forwarded to the Assistant Secretary of the Air Force for Manpower and Reserve Affairs for a final decision. See 32 C.F.R. § 865.4(l) (2011) (requiring the record of proceedings to be forwarded to the Secretary of the Air Force or his designee);[15] Air Force Instruction 36-2603, Air Force Board for Correction of Military

---

[15] This regulation went into effect on October 28, 2010. Personnel Review Boards, 75 Fed. Reg. 59,613 (Sept. 28, 2010) (to be codified at 32 C.F.R. pt. 865). Before that date, the

Records (Mar. 1, 1996) (same).  In a July 18, 2011 memorandum, amended on August 1, 2011, the Assistant Secretary declined to adopt the AFBCMR's recommendation.  SA 2-4.  Instead, he "decided to deny the application based upon [his] determination that granting it [was] not appropriate and would not be consistent with prior decisions of the AFBCMR in similar cases." Id. at 4.  He indicated that he did not "fully agree with the conclusions" reached by the AFBCMR.  Id. at 3.  More specifically, he did not "agree that TSgt Bonewell's actions complied with the intent of the provisions of 10 U.S.C., Section 1448(b) and clearly indicate[d] his desire to provide former-spouse coverage for the applicant," and instead adopted the rationale contained in the advisory opinion supporting the position that there was not substantial compliance.  Id. at 2.  The Assistant Secretary further noted that he did not agree with the AFBCMR's "determination that based upon the principles of equity, the AFBCMR should correct the record." Id. at 3.

The case then returned to the court for further proceedings.  Plaintiff renewed her motion for judgment on the administrative record and the other parties filed briefs in opposition.  One of the preliminary issues that emerged from the court's review of the record and the parties' briefs was whether the Assistant Secretary was the appropriate official to review the AFBCMR's recommendation and issue a final decision rejecting that recommendation.  Upon reviewing the pertinent Air Force regulations in effect during the relevant time period, the court concluded that in situations where the AFBCMR does not follow the recommendation contained in an advisory opinion and unanimously recommends that the application be granted, only the Secretary of the Air Force, and not the Assistant Secretary, could overrule the AFBCMR's decision and deny an application for the correction of military records.[16]  Accordingly, the court remanded the case to the Air Force to allow the Secretary to render a decision.

The Secretary denied plaintiff's application in a May 25, 2012 memorandum.  Def.'s Ex. 5-6.  In his decision, he determined that TSgt Bonewell did not substantially comply with the requirements for electing former spouse coverage under 10 U.S.C. § 1448(b).  Id. at 5.  He then determined that the case did not present a remediable injustice.  Id. at 5-6.  In summary, he concluded that "the evidence presented in this case did not demonstrate the existence of a material error or injustice."  Id. at 6.

The case again returned to this court for further proceedings.  The parties filed supplemental briefs and the court is now prepared to rule.

---

substance of this regulation was found at 32 C.F.R. § 865.4(p)-(q).

[16]  A detailed analysis of the relevant Air Force regulations can be found in the court's January 10, 2012 Order.

## II.  DISCUSSION

Plaintiff moves for judgment on the administrative record, seeking to overturn the Secretary's denial of her application for the correction of TSgt Bonewell's military record to reflect an election of former spouse coverage under the SBP.  In ruling on such a motion, the court makes "factual findings . . . from the record evidence as if it were conducting a trial on the record."  <u>Bannum, Inc. v. United States</u>, 404 F.3d 1346, 1357 (Fed. Cir. 2005);[17] <u>see also id.</u> at 1356 ("[J]udgment on the administrative record is properly understood as intending to provide for an expedited trial on the administrative record.").

### A.  Threshold Issues

### 1.  Existence of a Claim

The court begins by addressing a threshold issue raised by defendant:  whether the court properly remanded the case to the AFBCMR to consider the issue of substantial compliance.  Relying on the decision of the United States Supreme Court ("Supreme Court") in <u>Office of Personnel Management v. Richmond</u>, 496 U.S. 414 (1990), defendant argues that the remand was improper.  In <u>Richmond</u>, a federal government employee incorrectly advised a retiree regarding how much income he could earn before losing eligibility for disability retirement benefits.  <u>Id.</u> at 416.  Based on this erroneous advice, the retiree earned more income than the relevant statute allowed, leading to a six-month loss of his disability payments.  <u>Id.</u> at 417-18.  The Supreme Court rejected the retiree's argument that based on the faulty advice its employee provided, the government was equitably estopped from withholding his disability payments.  <u>Id.</u> at 423-34.  It explained that equitable estoppel could not be used to override the express terms of the disability retirement statute, which specifically disallowed the benefits claimed by the retiree, because the Appropriations Clause of the United States Constitution requires the payment of money from the United States Treasury ("Treasury") to be authorized by statute.  <u>Id.</u>; <u>see also id.</u> at 425 ("Any exercise of a power granted by the Constitution to one of the other branches of Government is limited by a valid reservation of congressional control over funds in the Treasury."), 427-28 (noting that the "fundamental and comprehensive purpose" of the Appropriations Clause "is to assure that public funds will be spent according to the letter of the difficult judgments reached by Congress as to the common good and not according to the individual favor of Government agents or the individual pleas of litigants."), 432 ("[F]unds may be paid out only on the basis of a judgment based on a substantive right to compensation based on the express terms of a specific statute.").

Defendant interprets <u>Richmond</u> to preclude plaintiff's argument that TSgt Bonewell substantially complied with the election requirements set forth in 10 U.S.C. § 1448(b), arguing

---

[17]  The decision in <u>Bannum</u> was based upon RCFC 56.1, which was abrogated and replaced by RCFC 52.1.  RCFC 52.1, however, was designed to incorporate the decision in <u>Bannum</u>.  <u>See</u> RCFC 52.1, Rules Committee Note (June 20, 2006).

that because SBP annuities are paid from the Treasury, the Appropriations Clause requires strict adherence to the election requirements.  There is no dispute that TSgt Bonewell did not adhere to the express terms of 10 U.S.C. § 1448(b) to elect former spouse coverage for plaintiff.  As a result, defendant contends, plaintiff could not have stated a claim for an SBP annuity for which the court could grant relief, and the court therefore should not have remanded the case to the AFBCMR to consider the issue of substantial compliance.  The court disagrees.

As explained by the Supreme Court, to a survive an RCFC 12(b)(6) motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  In other words, a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp., 550 U.S. at 556).  Plaintiff has met this pleading requirement for at least two reasons.

First, under the facts pleaded by plaintiff, the Appropriations Clause would not be offended by amending TSgt Bonewell's military record to reflect an election of former spouse coverage.  Congress has already authorized the payment of an SBP annuity to TSgt Bonewell's spousal beneficiary, whether that beneficiary is his widow or his former spouse.  If TSgt Bonewell's military record was amended to reflect a former spouse election, no additional money would be withdrawn from the Treasury; instead, payments to his widow would end and payments to his former spouse would begin.  This is not a case where allowing a claim for benefits would result in the payment of money from the Treasury that would not have been paid at all if the express terms of the statute were strictly applied.

Second, as the court discussed in its November 4, 2010 Opinion and Order, the United States Court of Appeals for the Federal Circuit ("Federal Circuit") continued to accept the application of the substantial compliance doctrine post-Richmond in cases in which compliance with the statute at issue was a prerequisite to a payment of money from the Treasury.  For example, the Federal Circuit recognizes that in tax refund suits, substantial compliance with unimportant or confusing provisions in the relevant statutes or regulations may be sufficient, even though such compliance is required to obtain the tax refund and that refund is payable from the Treasury.[18]  See Credit Life Ins. Co. v. United States, 948 F.2d 723, 726-27 (Fed. Cir. 1991).  In addition, the Federal Circuit permitted contractors filing claims under the Contract Disputes Act of 1978 ("CDA") to substantially comply with the statute's certification provision despite the certification being required to recover damages from the government that were payable from the Treasury.[19]  See, e.g., Fischbach & Moore Int'l Corp. v. Christopher, 987 F.2d 759, 760 (Fed.

_____

[18]  Both tax refunds, 26 U.S.C. § 6402 (2012), and judgments against the government in tax refund suits, 28 U.S.C. §§ 2414, 2517 (2012); 31 U.S.C. § 1304 (2012), are payable by the Secretary of the Treasury.

[19]  The federal government pays its contractors from money appropriated by Congress. See 31 U.S.C. § 1341(a)(1)(B) (prohibiting the award of a government contract before an

Cir. 1993); Heyl & Patterson, Inc. v. O'Keefe, 986 F.2d 480, 481 (Fed. Cir. 1993), overruled on other grounds by Reflectone, Inc. v. Dalton, 60 F.3d 1572 (Fed. Cir. 1995); Transam. Ins. Corp., Inc. ex rel. Stroup Sheet Metal Works v. United States, 973 F.2d 1572, 1580 (Fed. Cir. 1992).

In its November 4, 2010 Opinion and Order, the court held that "a plaintiff who alleges substantial compliance with 10 U.S.C. § 1448(b) has stated a claim upon which relief can be granted." Bonewell, 95 Fed. Cl. at 766. Upon further consideration, the court concludes that this holding is too broad and should be limited to cases presenting factual circumstances similar to those in this case; in other words, situations where the dispute concerns who should receive an SBP annuity, and not whether a SBP annuity should be awarded in the first instance. Accordingly, the court concludes that under the facts pleaded in this case, plaintiff has stated a claim upon which relief could be granted.

## 2. Judicial Relief for an Alleged Injustice

Defendant raises a second threshold issue: whether the court can grant relief based on the existence of an alleged injustice. Defendant argues that the court may only award monetary relief authorized by statute, and therefore if a plaintiff in a military pay case is not statutorily entitled to a particular benefit, the court lacks the authority to remand a case to a corrections board to address an alleged injustice related to the denial of that benefit or review a decision by the relevant military service that an injustice does not exist. Applying that argument to this case, defendant asserts that because plaintiff cannot receive an SBP annuity based on the express provisions of 10 U.S.C. § 1448(b), the court should not have remanded the case to the AFBCMR to consider plaintiff's allegation of injustice, and even if the remand was proper, the court cannot review the Secretary's determination that no injustice exists. Defendant's argument is flawed.

Under 10 U.S.C. § 1552(a), the Secretary of the Air Force, acting through the AFBCMR, may correct any military record of the Air Force when "necessary to correct an error or remove an injustice." If the Secretary denies an application for the correction of military records, and the reversal of that decision would lead to a money judgment, then the applicant can contest the decision in the Court of Federal Claims. See Strickland v. United States, 423 F.3d 1335, 1339 (Fed. Cir. 2005) ("Once the final decision issues, the service member may contest this final agency action in a court."); Sanders v. United States, 594 F.2d 804, 812 (Ct. Cl. 1979) (en banc) ("A claim for back pay within our jurisdiction presents an appropriate occasion for reviewing the actions of correction boards."), superseded in nonrelevant part by statute, 10 U.S.C. § 628 (2000

---

appropriation is made). And, judgments against the federal government on CDA claims are payable from the Judgment Fund, 41 U.S.C. § 7108(a) (2012) (citing 31 U.S.C. § 1304), which is a permanent appropriation created "to satisfy judgments against federal agencies," Bell BCI Co. v. United States, 91 Fed. Cl. 664, 668 (2010). The Secretary of the Treasury and his designees are responsible for disbursing appropriated funds from the Treasury to other executive agencies. 31 U.S.C. §§ 321, 3321-3322.

& Supp. I 2002), <u>as recognized in</u> <u>Richey v. United States</u>, 322 F.3d 1317, 1323-24 (Fed. Cir. 2003).

The court's review extends to determinations related to both alleged legal error and alleged injustice, so long as the requested correction would result in a money judgment. <u>See</u> <u>Grieg v. United States</u>, 640 F.2d 1261 (Ct. Cl. 1981) ("[T]he court cannot itself correct a simple injustice or direct a correction board to do so, without the correction implementing a money judgment."); <u>Sanders</u>, 594 F.2d at 813 ("To recover for failure to correct an alleged injustice, . . . it must be proved that such failure was . . . with monetary consequences."). The decision of the Federal Circuit in <u>Murphy v. United States</u>, 993 F.2d 871 (Fed. Cir. 1993), is not to the contrary. In <u>Murphy</u>, the Federal Circuit noted:

> [N]otwithstanding the language of 10 U.S.C. § 1552(a), invocation of the rubric "injustice" provides no basis for judicial relief. There must be a "pure legal error." Section 1552(a) describes the Correction Boards' jurisdiction to act on behalf of the Secretary to "remove an injustice." It says absolutely nothing about the Claims Court's jurisdiction which is circumscribed solely by the Tucker Act, and which demands that the government be called upon to answer in money. <u>Absent that</u>, there is no review in the Claims Court of alleged "injustice."

993 F.2d at 874 (emphasis added) (footnote and citations omitted). In other words, the Court of Federal Claims may review a failure to remove a purported injustice so long as the removal of the injustice would require the payment of money.

Moreover, binding precedent does not reflect that this injustice-related payment of money needs to be based on a strict adherence to the relevant statutory provision. For example, the United States Court of Claims remarked in <u>Sanders</u>:

> Whether the claim is based on legal error or material factual error, or injustice amounting to such error, is thus immaterial in regard to our power to review. It may be relevant, however, to the nature of proof necessary for plaintiff to recover. . . . To recover for failure to correct an alleged injustice, such as perhaps based on gross material error of fact or an action contrary to all evidence, it must be proved that such failure was arbitrary and capricious, or in bad faith, or contrary to law, or without rational basis, seriously prejudicial to plaintiff, and with monetary consequences. In such event, the abuse of administrative discretion rises to the level of legal error which merits judicial relief.

594 F.2d at 813 (footnote omitted); <u>see also</u> <u>Yee v. United States</u>, 512 F.2d 1383, 1387 (Ct. Cl. 1975) ("As this court has said before and reaffirms today, when a correction board fails to correct an injustice clearly presented in the record before it, it is acting in violation of its mandate. And such a violation, contrary to the evidence, is arbitrary and capricious.").

In this case, there is no question that the correction of TSgt Bonewell's military record to remove the alleged injustice would result in the payment of money pursuant to a money-mandating statute. Thus, the court is entitled to review the Secretary's determination that no remediable injustice exists in this case. For the same reason, it was proper for the court to remand the case to the Air Force to make a new determination regarding plaintiff's allegation of injustice. In fact, upon determining that plaintiff stated a claim upon which the court could grant relief in its November 4, 2010 Opinion and Order, the court was compelled to remand the case to the AFBCMR because plaintiff submitted evidence with her complaint–affidavits–that were not included in the administrative record considered by the AFBCMR or discussed in the AFBCMR's March 20, 2008 decision.[20] Bonewell, 95 Fed. Cl. at 768-69 (citing Walls, 582 F.3d at 1368). Because the AFBCMR had not rendered its March 20, 2008 ruling based on all of the evidence that was likely before it, the court directed the AFBCMR to reevaluate plaintiff's application based on all of the evidence. Id. at 769. In doing so, it explained that the AFBCMR should consider whether there was legal error ("the AFBCMR shall . . . decide whether TSgt Bonewell substantially complied with 10 U.S.C. § 1448(b)") or an injustice ("the AFBCMR shall . . . decide whether, given the thirty-two-year marriage between plaintiff and TSgt Bonewell and TSgt Bonewell's specific intent to provide the SBP annuity to plaintiff, equity demands a correction be made to remove an injustice to plaintiff"). Id. In other words, in its remand order the court was merely instructing the AFBCMR to comply with 10 U.S.C. § 1552(a), which permits the correction of military records when "necessary to correct an error or remove an injustice," and its implementing regulation, 32 C.F.R. § 865.4(h)(4), which requires the AFBCMR to determine "[w]hether the applicant has demonstrated the existence of a material error or injustice . . . ."

## B. Plaintiff's Renewed Motion for Judgment on the Administrative Record

Having disposed of the threshold issues raised by defendant, the court turns its attention to the merits of plaintiff's renewed motion for judgment on the administrative record. Due to the AFBCMR's decision not to follow the Air Force Review Boards Agency's advisory opinion, the court reviews the decision of the Secretary of the Air Force, which constitutes the final, reviewable decision.[21] See 32 C.F.R. § 865.4(l); see also Strickland, 423 F.3d at 1339 (holding,

---

[20] According to a letter attached to the complaint but not later made part of the administrative record, plaintiff's attorney forwarded the two affidavits dated March 2, 2007, to the AFBCMR on March 5, 2007. Compl. Ex. 1 at 9-10. In that letter, plaintiff's counsel indicated that the affidavit from plaintiff supplemented and superseded her earlier affidavit, id. at 9, implying that plaintiff's first affidavit had also been submitted to the AFBCMR.

[21] Plaintiff's contention that the Secretary is not entitled to overrule the AFBCMR when the court remands the case to the AFBCMR for reconsideration is without merit. The applicable regulation does not distinguish between situations where the AFBCMR is considering an application in the first instance or reconsidering an application on remand–in both cases the

under the regulations of the United States Navy, that if "the Secretary disagrees with the Board and rejects its recommendation, then the Secretary must provide a written statement supporting his rejection.  In that case, the court reviews the decision on the basis of the Secretary's written statement.").  The Secretary's decision is entitled to deference.  Bray v. United States, 515 F.2d 1383, 1391 (Ct. Cl. 1975) (per curiam); see also Heisig v. United States, 719 F.2d 1153, 1156 (Fed. Cir. 1983) (noting that a court is not to substitute its judgment for that of a military service "when reasonable minds could reach differing conclusions on the same evidence"); Sanders, 594 F.2d at 814 (holding that even if a court disagrees with a correction board's conclusion "about whether or not a specific situation was unjust, [it] will not substitute [its] judgment for the board's when reasonable minds could reach differing conclusions.").  Accordingly, the court may only "review the rationale underlying the Secretary's decision to determine if the decision was arbitrary, capricious, unsupported by substantial evidence, or in violation of law."  Strickland, 423 F.3d at 1339; accord Boyd v. United States, 207 Ct. Cl. 1, 4 (1975) ("The court . . . may reject the decision of a Secretary only if he has exercised his discretion arbitrarily, capriciously, in bad faith, contrary to substantial evidence, or where he has gone outside the board record, or fails to explain his actions, or violates applicable law or regulations.").

## 1.  Substantial Compliance

The Secretary addressed both substantial compliance and injustice in his May 25, 2012 decision.  With respect to the issue of substantial compliance, he found:

> TSgt Bonewell did not substantially comply with the requirements for making a former-spouse election under 10 U.S.C. § 1448(b), for the reasons discussed in the AFBCMR legal advisory opinion.  In particular, the submission of a DD Form 2558, Permission to Start, Stop Or Change An Allotment, does not substantially comply with the requirement to submit a written statement, signed by both parties, in the form of a DD Form 2656, Survivor Benefit Plan (SBP) Election Statement For Former Spouse.  As their titles indicate, these two forms are used for specific and entirely different purposes.  Moreover, expressions of intent, however clear, do not constitute substantial compliance with specific statutory and regulatory

---

decision of the AFBCMR is not a final decision when the AFBCMR does not follow the advice set forth in an advisory opinion.  See 32 C.F.R. § 865.4(*l*).

Further, plaintiff's contentions that the Secretary is not entitled to overrule the AFBCMR (1) without identifying any evidence in the administrative record demonstrating factual or legal error made by the AFBCMR or (2) so long as the AFBCMR's findings were justified by the record are equally unavailing.  Pursuant to 32 C.F.R. § 865.5(a), "[t]he Secretary may direct such action as he or she deems appropriate on each case," and is only required to issue a written decision that includes "a brief statement of the grounds for his/her final decision."  There is no requirement that the Secretary review the AFBCMR's decision under a deferential standard; rather, his review of the record of proceedings is de novo.

> requirements, especially given the clear and unambiguous requirement to submit a DD Form 2656 in order to designate a former spouse as the beneficiary for SBP benefits.[22]

Def.'s Ex. 5 (footnote added).  In the advisory opinion referred to by the Secretary, the legal advisor for the Air Force Review Boards Agency analyzed the substantial compliance issue, and summarized his recommendation as follows:

> I find a lack of substantial compliance in this case based upon:  the missing DD 2656-1; the missing full court order; the quantity and nature of the required information missing and the fact that there is no specific reference to requesting ex-spouse SBP coverage in what TSgt Bonewell submitted.  This is not a matter of an uncrossed T, or undotted I, but significant missing statutory requirements, (the written statement requirement and the requirement it be "signed by such person and the former spouse") as well as missing most of the information requested in the manner that the statute said the Secretary was to proscribe [sic].

SA 49.

Plaintiff raises a number of objections to the Secretary's discussion of substantial compliance:  (1) he did not address substantial compliance, only strict compliance; (2) he improperly relied on the Air Force Review Boards Agency legal advisor's "find[ing]" that TSgt Bonewell did not substantially comply with 10 U.S.C. § 1448(b); (3) he did not explain how congressional purposes would be undercut by TSgt Bonewell's failure to strictly comply with 10 U.S.C. § 1448(b); and (4) he did not provide an independent analysis.  Plaintiff's objections cannot be sustained.

The Secretary concluded that TSgt Bonewell did not substantially comply with the requirements of 10 U.S.C. § 1448(b), for the reasons set forth in the advisory opinion.  He then expanded on that conclusion, explaining his primary problem with TSgt's Bonewell's submission–that the submission of DD Form 2558 was insufficient to comply with the statute's requirement that a written statement signed by both the service member and the former spouse be submitted to the Air Force on a DD Form 2656-1.  The court finds no error in this aspect of the Secretary's decision.

The Secretary is only required to provide "a brief statement of the grounds" for his decision.  32 C.F.R. § 865.5(a).  He satisfied this requirement in two ways.  First, he agreed with, and incorporated, the reasoning set forth in the advisory opinion.  Nothing in the relevant statutes and regulations prohibit him from adopting the analysis of others.  And, it is of no moment that

---

[22]  It is apparent from the Secretary's discussion that he is referring to DD Form 2656-1, Survivor Benefit Plan (SBP) Election for Former Spouse Coverage, and not DD Form 2656, Data for Payment of Retired Personnel.

the legal advisor used the word "find" in the advisory opinion; there is no indication that the Secretary treated the advisory opinion as binding on him.  Second, the Secretary explained why in particular he believed that there was no substantial compliance in this case.  That he did not address every factor that might support a finding of substantial compliance–for example, congressional intent–does not render his decision improper.  To require the Secretary to address every possible relevant factor is contrary to the prescription that his statement of the grounds for his decision be brief.

In addition, contrary to plaintiff's assertion, the Secretary did address substantial compliance.  As the Secretary noted, 10 U.S.C. § 1448(b) requires a written statement signed by both the service member and the former spouse on a form he prescribes.  His determination that the documents submitted by TSgt Bonewell were insufficient to satisfy 10 U.S.C. § 1448(b)'s requirements, as reflected in his decision and in the advisory opinion with which he agreed, is entirely consistent with his conclusion of a lack of substantial compliance.  Moreover, the Secretary's statement that clear expressions of intent do not constitute substantial compliance does not signify that he was requiring strict, rather than substantial, compliance.  He did not declare that it was impossible for a service member to substantially comply with 10 U.S.C. § 1448(b)'s requirements, therefore leaving open the possibility that a finding of substantial compliance might be proper if, for example, a service member submitted both the proper form without the former spouse's signature and a copy of the separation agreement containing the signatures of both the service member and his former spouse.

Reviewing the Secretary's decision, the court cannot conclude that he was incorrect to find that TSgt Bonewell did not substantially comply with the relevant statute and regulations.  TSgt Bonewell's submission was deficient in a number of ways, and the court would be hard-pressed to find that the submission of a form relating to allotments, along with a page from a separation agreement that briefly, and incorrectly, refers to the SBP, provided the Air Force with adequate notice of an intent to elect former spouse coverage.  Accordingly, for all of the reasons stated above, the court finds that the portion of the Secretary's decision directed at the issue of substantial compliance is not arbitrary, capricious, unsupported by substantial evidence, or in violation of law.

## 2. Injustice

On the issue of injustice, the Secretary found:

I have considered all of the evidence submitted by Ms. Rosa Bonewell, including her affidavit and the affidavit of her son, and determine that a correction is not appropriate to remove an injustice in this case.  Congress has created specific requirements for SBP elections, and here there was no compliance or substantial compliance with those requirements.  Consequently, I have determined that entitlement to TSgt Bonewell's SBP annuity vested in his widow at the time of his death–Ms. Carmen Titong-Bonewell–and not in his former spouse, Ms. Rosa

Bonewell.  In making this decision, I took into account the fact that a decision either way would be to the disadvantage of one of the former spouses of TSgt Bonewell.  Under these circumstances, my obligation is to determine whether there is an injustice that should produce a different result.  I've determined under the facts of the case that a decision either way would create an injustice of denying one of the former spouses of TSgt Bonewell of the payment of the SBP annuity.  While I agree with the AFBCMR panel that certain equities lie with Ms. Rosa Bonewell, correcting the record as Ms. Rosa Bonewell asks would necessarily entail vacating Ms. Carmen Titong-Bonewell's legal entitlement to TSgt Bonewell's SBP annuity.  Such a correction would create an injustice for Ms. Carmen Titong-Bonewell under the law.

Def.'s Ex. 5-6.  Plaintiff contends that this analysis is faulty in three respects:  (1) the Secretary improperly rested his decision on policy grounds external to the administrative record; (2) the Secretary did not balance the equities as between plaintiff and defendant-intervenor; and (3) it was improper for the Secretary to determine that when there are competing interests, an injustice that would be suffered by an individual who would lose the benefit to which she was legally entitled cancels out the injustice that the other individual would suffer through not receiving a benefit that she might be entitled to on equitable grounds.

The court can easily dispose of plaintiff's first two objections.  First, the Secretary does not indicate that he based his decision on general policy grounds; his discussion relates solely to the facts and equities in this case.  And even if he did base his decision on policy grounds, he would have been entitled to do so, so long as he provided an adequate explanation.  Hertzog v. United States, 167 Ct. Cl. 377, 387 (1964).  Second, although the Secretary did not specifically enumerate the various equities involved, it is clear from his decision that he took them under advisement.  Moreover, he was not required to provide a detailed and expansive decision, but only a "a brief statement of the grounds for his[] final decision."  32 C.F.R. § 865.5(a).

Plaintiff's third objection also lacks merit.  There is no doubt that plaintiff has suffered, and continues to suffer, from the operation of a statutory scheme that punishes former spouses who are entitled to a SBP annuity pursuant to a divorce decree and, due to the amicable nature of the divorce and the repeated assurances of the retiree, have no reason to suspect that the retiree did not file the proper paperwork.  While the SBP statute allows individuals like plaintiff to protect themselves by seeking a deemed election of former spouse coverage, there is no mechanism for advising them of this right, even if the relevant military service has been made aware of the divorce through other means.  As the Secretary remarked, there are equities that lie with plaintiff.

Nevertheless, the Secretary was also correct in noting that defendant-intervenor would suffer from an injustice if he corrected TSgt Bonewell's military record to reflect an election of former spouse coverage.  Defendant-intervenor was TSgt Bonewell's spouse at the time of his death, and because TSgt Bonewell neither strictly nor substantially complied with the provisions

of 10 U.S.C. § 1448(b) to change his SBP coverage from "spouse" to "former spouse," she was, by operation of law, the proper beneficiary of the SBP annuity.  The Secretary has the discretion to correct a military record to remove an injustice, but he also has the discretion to weigh the effect that the proposed correction might have on others.  Indeed, it will be a "comparatively rare" case in which the failure to remove an alleged injustice rises "to the level of legal error which merits judicial relief."  Sanders, 594 F.2d at 813.  This is likely "because the proof must overcome the strong, but rebuttable, presumption that administrators of the military, like other public officers, discharge their duties correctly, lawfully, and in good faith" and "[s]trong policies compel the court to allow the widest possible latitude to the armed services in their administration of personnel matters."  Id.; accord Dodson v. U.S. Gov't, Dep't of the Army, 988 F.2d 1199, 1204 (Fed. Cir. 1993) ("[M]ilitary administrators are presumed to act lawfully and in good faith . . . , and the military is entitled to substantial deference in the governance of its affairs.").  Accordingly, the court concludes that the Secretary's decision not to remove the injustice alleged by plaintiff does not rise "to the level of legal error which merits judicial relief."  Sanders, 594 F.2d at 813.  In other words, the portion of the Secretary's decision directed at the issue of injustice is not arbitrary, capricious, unsupported by substantial evidence, or in violation of law.

## C. Bad Faith and Inducement

As noted above, plaintiff asserted three claims for relief in her complaint.  The court's determination that the Secretary's decision should be upheld disposes of plaintiff's first two claims, which concern the AFBCMR's earlier denials of her applications for the correction of military records.  Plaintiff's third claim for relief, however, does not contain a challenge to an AFBCMR decision.  Rather, plaintiff contends that the Air Force acted in bad faith by inducing her to dismiss her district court action by assuring her a favorable recommendation to the AFBCMR.  The court lacks jurisdiction to adjudicate allegations of bad faith as they sound in tort.[23]  See, e.g., Minehan v. United States, 75 Fed. Cl. 249, 259 (2007) ("[T]he law is clear that allegations regarding bad faith or fraudulent actions by government officials or agencies do sound in tort."); Franklin Savs. Corp. v. United States, 56 Fed. Cl. 720, 731 (2003) ("[T]o the extent that Franklin alleges the appointment of the conservator was made in bad faith, those claims were ones sounding in tort over which this court has no jurisdiction . . . ."); Richards v.

---

[23]  The court may only entertain allegations that the final administrative decision maker, here the Secretary of the Air Force, acted in bad faith in rendering his decision.  See, e.g., Heisig, 719 F.2d at 1156 ("'[R]eview of the administrative decision is limited to determining whether the . . . action was arbitrary, capricious, or in bad faith, or unsupported by substantial evidence, or contrary to law, regulation, or mandatory published procedure of a substantive nature by which [the complainant] has been seriously prejudiced.'" (quoting Clayton v. United States, 225 Ct. Cl. 593, 595 (1980))); Boyd, 207 Ct. Cl. at 4 ("The court . . . may reject the decision of a Secretary only if he has exercised his discretion arbitrarily, capriciously, in bad faith, contrary to substantial evidence, or where he has gone outside the board record, or fails to explain his actions, or violates applicable law or regulations.").

United States, 20 Cl. Ct. 753, 758 (1990) ("Finally, plaintiff's Complaint suggests that the District Court and other government employees acted fraudulently and in bad faith in their dealings with him.  [S]uch claims sound in tort and as such also are clearly outside the jurisdiction of the United States Claims Court.").  Nor does the court have jurisdiction to entertain claims of fraudulent inducement, which also sound in tort.  See, e.g., Aetna Cas. & Sur. Co. v. United States, 655 F.2d 1047, 1059 (Fed. Cir. 1981) (holding that inducement is a claim sounding in tort that is beyond the court's Tucker Act jurisdiction); Phang v. United States, 87 Fed. Cl. 321, 325 (2009) ("[T]his court has no jurisdiction under the Tucker Act to hear plaintiff's claims for fraud, fraud in the inducement, and breach of contract. . . .  Plaintiff's claims for fraud and fraud in the inducement sound in tort."), aff'd, 388 F. App'x 961 (Fed. Cir. 2010) (unpublished decision).  Accordingly, the court must dismiss plaintiff's third claim for relief for lack of jurisdiction.

## III.  CONCLUSION

For the reasons set forth above, the court **DISMISSES** plaintiff's third cause of action for lack of jurisdiction, and **DENIES** plaintiff's renewed motion for judgment on the administrative record.  No costs.  The clerk is directed to enter judgment for defendant and defendant-intervenor.

**IT IS SO ORDERED.**

s/ Margaret M. Sweeney
MARGARET M. SWEENEY
Judge